# THOMAS *v.* STATE OF MARYLAND

[No. 91, September Term, 1975.]

*Decided March 12, 1976.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Timothy E. Welsh,* with whom was *Jac E. Knust* on the brief, for appellant.

*Bernard A. Raum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We are here presented with the question of whether the State adduced legally sufficient evidence to convict appellant, Richard Leroy Thomas (Thomas), of violation of Code (1957, 1970 Repl. Vol., 1974 Cum. Supp.) Art. 66½, § 11-902 (b) making it "unlawful for any person to drive or attempt to drive or to be in actual physical control of any vehicle within this State while his driving ability is impaired by the consumption of alcohol." We conclude that it did not.

On April 28, 1975, at approximately 2:25 a.m. an officer of the Howard County Police Department observed a vehicle with lights on standing on the left paved shoulder of a lighted ramp leading from Rt. 29 to Little Patuxent Parkway. The highway at that point is described as "a good 50 feet across" with "two lanes and a paved shoulder." As the officer put it, as he "approached the vehicle [he] observed that [Thomas] was either asleep or passed out on the driver's side of the vehicle. . . . [T]he windows were up. The keys were in the ignition. The motor was off. [He] tapped on the window, and woke [Thomas] up and asked him to step out of his vehicle. [Thomas] had trouble locating the window handle to crank down the window, and had trouble locating the door handle . . . . Finally [Thomas] did get out and [the officer] spoke with [Thomas] and asked him

for his driver's license and registration." The officer "smelled what [he] believed was an odor of alcohol, and speaking with [Thomas] himself, [the officer] caught a whiff of alcohol on his breath." The keys to the ignition were in the accessory or off position. Thomas "was staggering. His speech was slurred. He was disoriented." In response to a question from the officer as to where he lived, Thomas replied that he lived "right across the roadway, and he could see his porch light." When Thomas refused offers of the officer to take him home he was placed under arrest, charged with driving or attempting to drive while in an intoxicated condition or while his driving ability was impaired by the consumption of alcohol.

Thomas made no attempt in the presence of the officer to drive the vehicle. The officer had no knowledge as to whether the vehicle was in operating condition nor did he make any investigation which would reveal to him how recently the vehicle had been operated. The officer said that Thomas made no explanation to him as to how the vehicle reached the location at which it was found. The officer's testimony was the sole evidence offered by the State.

The matter came on for trial in the District Court of Maryland for Howard County. Thomas was there convicted of violating § 11-902 (b) relative to driving while driving ability was impaired by the consumption of alcohol. Thomas entered an appeal to the Circuit Court for Howard County where, pursuant to the provisions of Code (1974) § 12-401 (c) Courts and Judicial Proceedings Article, the matter was tried de novo. He was again convicted of a violation of § 11-902 (b) on the above testimony. We granted certiorari under Code (1974) § 12-305 Courts and Judicial Proceedings Article since this case represents an issue which Maryland appellate courts do not appear to have previously considered.

The State devoted a considerable portion of its brief to argument that under the facts and circumstances here Thomas was "in actual physical control" of the vehicle and thus in violation of the statute. The provision relative to "actual physical control of any vehicle" while a person is intoxicated or while his driving ability is impaired by the

consumption of alcohol came into the Maryland Code by the enactment of Chapter 158 of the Acts of 1969. The impairment provision was added at that time as was the implied consent to take a chemical test to determine the alcoholic content of blood, breath, or urine as a condition to the exercise of the privilege of operating a motor vehicle upon the highways of this State. By that act Code (1957) Art. 66¹/₂, § 206 was repealed and an entirely new § 206 enacted, which section is the antecedent of our present § 11-902. Prior to that enactment § 206 made it "unlawful for any person ... who is under the influence of intoxicating liquor ... to drive or attempt to drive any vehicle ... within this State." We have said many times that a hornbook rule of statutory construction is that in ascertaining the intention of the Legislature all parts of a statute are to be read together to find the intention as to any one part and that all parts are to be reconciled and harmonized if possible and that a corollary to that rule is that if there is no clear indication to the contrary and it is reasonably possible, a statute is to be read so that no word, clause, sentence or phrase shall be rendered surplusage, superfluous, meaningless, or nugatory. *See e.g. Kadan v. Bd. of Sup. of Elections,* 273 Md. 406, 415, 329 A. 2d 702 (1974); *A. H. Smith Sand & Gravel v. Dep't,* 270 Md. 652, 659, 313 A. 2d 820 (1974); and *Thomas v. Police Commissioner,* 211 Md. 357, 361, 127 A. 2d 625 (1956). Accordingly, when the General Assembly added the words "in actual physical control of any vehicle" to the statute it must have intended a meaning different from driving or attempting to drive. The argument of the State here that Thomas was in actual physical control of the vehicle is without merit for a very simple reason, namely, he was never so charged.

Prior to the complete revision of the Maryland motor vehicle laws by Chapter 1007 of the Acts of 1943 transferring them to Art. 66¹/₂, Maryland Code (1939), Art. 56, § 199 made it unlawful for a person to "operate or drive or attempt to operate or drive a motor vehicle on the public highways of this State when intoxicated or at all under the influence of liquor . . . ." It is significant that the statute now speaks of driving rather than operating since the term

"operate" is generally regarded as being broader than the term "drive." For instance, in *McDuell v. State*, 231 A. 2d 265 (Del. 1967), the issue before the court was whether "a conviction of violation of [the statute] prohibiting 'driving' a motor vehicle while under the influence of intoxicating liquor, necessarily constitute[d] a second offense thereunder by reason of a prior conviction of violation of [the statute by then] repealed, which prohibited 'operating' a motor vehicle while under the influence of intoxicating liquor."[1] Justice Herrmann there said for the court:

> "The words 'operating' and 'driving' are not synonymous; they have well-recognized statutory distinctions. Of the two terms, the latter is generally accorded a more strict and limited meaning. The term 'driving' is generally used to mean, in this connection, steering and controlling a vehicle while in motion; the term 'operating,' on the other hand, is generally given a broader meaning to include starting the engine or manipulating the mechanical or electrical devices of a standing vehicle. See Annotation 47 A.L.R.(2d) 570, et seq. The two words have been thus distinguished in Delaware. See State v. Pritchett, 3 Storey 583, 53 Del. 583, 173 A.2d 886 (1961).

> "Applying these definitions, the term 'driving' is encompassed within the term 'operating'; but the reverse is not necessarily so. One may not drive a vehicle without operating it; but one may operate the engine or devices of a vehicle without driving it. Otherwise stated: while all driving is necessarily operation of a motor vehicle, not all operation is necessarily driving.

---

1. It was under the prior statute that the nisi prius decision upon which the State relies, State v. Pritchett, 173 A. 2d 886 (Del. Super. Ct. 1961), arose. Justice Herrmann pointed out that the former statute was found applicable in *Pritchett* "to an intoxicated defendant found slumped over the steering wheel of a standing vehicle," and said, "Presumably, the General Assembly was aware of [*Pritchett*] and its discussion of the different meanings attributed to the statutory language here involved. Apparently, the Legislature made the changes advisedly, intending thereby to remove 'standing' violations from the operation of the Statute."

"We conclude that the Legislature intended thus to limit the Statute when in § 4176 it substituted the term 'driving' for the term 'operating,' previously appearing in § 4111." *Id.* at 267.

In *State v. Joswick,* 233 A. 2d 154 (Del. 1967), the court held that the charge of operating a motor vehicle while under the influence of intoxicating liquor did not charge a violation of a statute which prohibits driving a motor vehicle while under the influence of intoxicating liquor, referring to *McDuell.*

A number of courts have recognized this distinction. *See, e.g. Williams v. State,* 111 Ga. App. 588, 590, 142 S.E.2d 409 (1965) ("the offense of operating an automobile while under the influence of intoxicants can be committed without driving it, but the offense of driving while under the influence can not be committed without operating the car."); *Prudhomme v. Hults,* 278 N.Y.S.2d 67, 69, 27 A.D.2d 234 (Sup. Ct., App. Div. 3d Dep't 1967) ("Although there is a dearth of authority in New York, a relatively early case recognized that an individual 'began to violate the law [against operating while intoxicated] the instant he began to manipulate the machinery of the motor for the purpose of putting the automobile into motion,' even though he did not succeed in moving it. (*People v. Domagala,* 123 Misc. 757, 758, 206 N.Y.S. 288 [County Court, Erie County, 1924].)"); *Bradam v. State,* 191 Tenn. 626, 629, 235 S.W.2d 801 (1950); *Line v. State,* 191 Tenn. 380, 383, 234 S.W.2d 818 (1950); 61A C.J.S. *Motor Vehicles* § 628 at 352 (1970) ("The words 'operating' and 'driving' are not synonomous. Of the two terms, 'driving' is generally accorded a more strict and limited meaning, and the word 'operating' has a broader meaning. 'Operating' may, but does not necessarily, include 'driving,' while 'driving' does of necessity include 'operating.' Driving usually denotes movement of the vehicle in some direction, and means steering and controlling a vehicle while in motion."); 7 Am. Jur. 2d *Automobiles and Highway Traffic* § 256 at 808 (1963); and Annot.: *Driving While Drunk* 47 A.L.R.2d 570, § 2 at 571-72 (1956) ("Of the two terms, 'driving' is given the stricter construction, and in numerous

cases it has been held that to be guilty of driving a vehicle while intoxicated, the defendant must have had the vehicle in motion at the time in question.").

This is a criminal case. Therefore, the burden rested upon the State to establish by proof beyond a reasonable doubt every fact material to the guilt of the defendant. As Maryland lawyers for generations have quoted to juries from L. Hochheimer, *Law of Crimes and Criminal Procedure* § 157 (2d ed. 1904), "nothing is to be presumed or taken by implication against [the defendant]," and "the burden of proof never shifts, but rests upon the [State] throughout . . . ." Therefore, it was not incumbent upon Thomas, as suggested by the State in argument before us, to take the stand to explain the circumstances in which he was found. Before Thomas can be convicted of the crime with which he was charged, it must be established that there was a crime. In other words, the *corpus delicti* must be established. 1 Wharton, *Criminal Law and Procedure* § 66 (Anderson, 1957); E. Dangel, *Criminal Law* § 62 (1951); Wigmore, *Evidence* § 2072 (3d ed. 1940); Clark and Marshall, *Law of Crimes* § 2.04 (7th ed. 1967).

In *Hunt v. State*, 216 Ind. 171, 23 N.E.2d 681 (1939), the court said:

> "In a case like the one at bar the *corpus delicti* would be established, we think, by proof beyond a reasonable doubt that a motor vehicle was operated on a public highway of this state, and that the operator thereof was at the time under the influence of intoxicating liquor." *Id.* at 178.

*See also* Annot., 47 A.L.R.2d *supra*, § 3 [b] at 573.

Insight into what will satisfy the State's burden of proof can be gleaned from an examination of some of the cases. For instance, in *Underwood v. State*, 24 Ala. App. 191, 132 So. 606 (1931), the defendant was charged under a statute prohibiting driving while under the influence of intoxicating liquor. The evidence disclosed that he was found sitting in the front seat of a vehicle which was standing partly in the road. The court said that "there was no evidence that he

drove the car or in any way attempted to do so." It further observed that "there was some evidence tending to show the accused appeared to have been drinking at the time he was arrested, but none whatever that he operated the car in question or that he made the slightest attempt to do so." It then said:

> "There is no construction of the English language, with which we are familiar, to the effect that an automobile is being operated or driven, as here held in the court below, when the entire evidence, without dispute or conflict, disclosed that the car was stationary during the entire time and was not moved or attempted to be moved.
>
> "The operation, or driving, of the motor vehicle in question was an essential ingredient of the offense charged against the defendant in this case, and upon the prosecution rested the burden to prove this, the measure of proof being, as in all criminal cases, beyond a reasonable doubt. This the state failed to do, and such failure as a matter of law entitled the accused to his discharge. The trial court erred in holding otherwise." *Id.* at 192.

In *State v. Sanford,* 118 Vt. 242, 108 A. 2d 516 (1954), the defendant was charged with operating an automobile under the influence of liquor. State police arrived on the scene, apparently in response to a complaint. They found the defendant's "car with its front wheels driven off the left side of the road opposite a farmhouse and with its left rear wheel in the left hand ditch . . . ." They "observed that the tire on the right rear wheel had gouged out the surface of the road to a depth of two or three inches, and that the left rear wheel was practically buried in the mud." The motor was not running. The police did not remember whether the ignition switch was on or off. Defendant was found "lying asleep on the front seat with his buttocks under the steering wheel and his head on the seat near the right hand door, and they found some full and some empty beer bottles on the floor of the car, but did not count them." They smelled the odor of

alcohol, observed that defendant's clothing was not in good order and that his eyes were bloodshot, "and found him so intoxicated that his knees would buckle and he couldn't stand up." He said "that he had had two small bottles of beer, that he had been driving the car and had started from White River Junction." The court said:

> "There is no direct evidence that the respondent was under the influence of intoxicating liquor when he operated his automobile at the place and on the day alleged. When, as here, the evidence relied upon to show this fact is entirely circumstantial, the circumstances proved must exclude every reasonable hypothesis except that the respondent is guilty. . . .

> "There is no direct evidence that the respondent drank any intoxicating liquor before he drove off the road, nor is there any evidence as to the length of time he had been there after the motor stopped running. For aught that appears he may have been there much longer than enough to get into the condition in which he was found by the officers. The evidence leaves it a matter of conjecture as to whether he was under the influence of intoxicating liquor when he operated his car, and is not so cogent as to exclude every reasonable theory consistent with his innocence." *Id.* at 244.

In *Carter v. State*, 172 Tex. Crim. 95, 353 S.W.2d 458 (1962), the defendant was charged with driving while intoxicated. There the vehicle was "parked off the pavement in a ditch in the lake." The defendant "was seated alone in the automobile behind the steering wheel and at such time was attempting to drive the vehicle from the lake." A barricade had been torn apart and there were certain tire and skid marks leading from the barricade to the automobile in which defendant was seated. The sum total of the evidence there was held sufficient to establish the charge. It is to be noted, however, that the defendant was there attempting to drive the vehicle from the lake.

The North Carolina court found sufficient evidence to convict of driving under the influence in *State v. Graham*, 264 N. C. 228, 141 S.E.2d 275 (1965). In that case the defendant was found in an automobile "with its front bumper up against the opposite side of a house from its driveway, with its motor running and its lights burning." Its rear wheels were buried in the lawn about two and a half or three inches. The heater fan was on and it was warm inside the vehicle. The police testified, however, that the defendant told them that he had driven the vehicle to where it was found up against the house.

In *State v. Webb*, 78 Ariz. 8, 274 P. 2d 338 (1954), the defendant was charged with being in actual physical control of a motor vehicle while under the influence of intoxicating liquor. The truck in question was parked in the westbound lane of traffic next to some barricades, the combination of which had the effect of blocking the entire west traffic lane. The vehicle was found at 2 a.m. with its bright lights on and motor running. The court said that "[t]he officer found defendant to be in a very intoxicated condition, 'passed out' or asleep with both hands and his head resting on the steering wheel." The court found significant the fact that the Arizona statute which formerly prohibited driving a vehicle upon a highway while under the influence of intoxicating liquor had been changed by the addition of the words "or be in 'actual physical control,' " pointing out that these "words 'were added in the *disjunctive.*' " (Emphasis in original.) It then said:

> "The conclusion we draw therefrom is that the legislature intended the present law to embrace fact situations not covered by the old, more particularly the legislature intended the law should apply to persons having control of a vehicle while not actually driving it or having it in motion." *Id.* at 10.

This case is factually distinguishable from *State v. Chapman*, 43 N. J. 300, 204 A. 2d 139 (1964), where "[d]efendant was found intoxicated at the wheel of the

vehicle, standing with motor off at a position other than a normal one for parking." The court found "quite incredible" his "explanation that he was cut off by another car and was so unnerved by the near-miss that he consumed some liquor on the spot from a bottle that somehow disappeared" and said that "[t]he evidence warranted a finding that he drove the car and did so while under the influence of alcohol." A case close factually to *Chapman* is *Poling v. State*, 295 N.E.2d 635 (Ct. of App. Ind., 1st Dist. 1973), where an individual called the police to investigate a car sitting in the traveled portion of a street, reporting that the engine of the car was running, the lights were on and the sole occupant was leaning toward the center of the car from the driver's side, with his head against the dashboard, that he could not identify the occupant and did not see him "drive the car." A police officer testified that he "found Poling unconscious, behind the wheel of the car with the engine running and the lights on." He had regurgitated and the odor of alcohol was present in the car. Poling and his brother testified that they had met at the street corner in question, that the brother had parked his car and they had left in Poling's car "with the brother driving because Poling was tired," that after drinking several beers they returned to the same intersection, that the brother stopped Poling's car in the same position in which it was found at the time of arrest and left in his own car, that he left Poling's car running with the lights on and Poling in it, and that while they were together Poling did not drive the car. Poling testified that immediately after his brother left he became sick and he did not drive the car. The court pointed out that it is "driving" a vehicle while under the influence of liquor which is forbidden in Indiana, not "operating" as in some other states. It "presume[d] the Legislature used the word 'drive' intentionally," referred to Black's Law Dictionary (4th ed. rev. 1951) and "conclude[d] that the Indiana statute prohibits a defendant from 'driving' a vehicle in the common meaning of the word, i.e., to cause the vehicle to be in motion." It then said:

"Poling questions the sufficiency of the evidence

to support a finding that he did in fact 'drive' his car. He argues, that at best, the State proved only that he was sitting in his car drunk, with the engine running and the lights on.

"We agree. In every criminal prosecution, each element of the crime must be proven beyond a reasonable doubt. Here there is insufficient evidence to prove beyond a reasonable doubt that Poling drove the car at the time and place in question. In fact, each of the State's witnesses testified that he did not see Poling drive the car.

" 'Mere suspicion of guilt or opportunity to commit the crime are insufficient to support a conviction.' Gaddis v. State (1969), 253 Ind. 73, 251 N.E.2d 658 and Baker v. State (1956), 236 Ind. 55, 138 N.E.2d 641.

"In the case at bar, there was no proof beyond a reasonable doubt that defendant drove his car. Therefore, the conviction was not supported by sufficient evidence on each element and must fail." *Id.* at 637.

All the evidence in this case proves is that Thomas was in a vehicle by the side of a road, possibly intoxicated, at an early hour in the morning. Left to conjecture is whether he drove the vehicle to that location after imbibing alcohol or whether he had parked it there, been picked up by some other individual, and then dropped off at the same spot as was done in *Poling*. We do not know how long Thomas had been at this location. Also left to conjecture is whether the vehicle was operable. We may suspect that Thomas did not drop down from outer space into the vehicle in question, that he drove the vehicle to that location, and that when he drove it he was under the influence of alcohol. When the day arrives, however, when a person may be convicted upon the basis of suspicion only, liberty will have vanished from the land. Under our system of justice it was incumbent upon the State to prove the elements of the crime. In this instance it has utterly failed to prove the *corpus delicti* of the crime, that Thomas drove the vehicle on a public highway while his

driving ability was impaired by alcohol. In fact, it has yet to prove that he drove the vehicle. Thus, the conviction must be reversed.

*Judgment reversed; Howard County to pay the costs.*