534 So.2d 73 (1988)
STATE of Louisiana, Appellee,
v.
Gregory TRAHAN, Appellant.
No. K88-82.
Court of Appeal of Louisiana, Third Circuit.
November 9, 1988.
Alfred F. Boustany, II, Lafayette, for appellant.
David Hutchins, Lafayette City Ct. Prosecutor, Lafayette, for appellee.
Before FORET, DOUCET and YELVERTON, JJ.

ON REMAND FROM THE LOUISIANA SUPREME COURT
FORET, Judge.
Defendant, Gregory Trahan, was charged by bill of information with driving while intoxicated, in violation of La.R.S. 14:98. Following a bench trial, Trahan was convicted as charged and sentenced to serve 125 days in the parish jail and pay a fine of $342.50. In addition, the sentence imposed required Trahan to serve 30 days in default of paying the fine. The 125 days in jail were suspended and Trahan was placed on unsupervised probation for 12 months with special conditions.
Trahan applied to this Court for writs of certiorari and review, which were denied. Subsequently, the Louisiana Supreme Court, 521 So.2d 1178, granted defendant's writ application and remanded the case to this Court for an opinion. We reverse Trahan's conviction for driving while intoxicated and the corresponding sentence is therefore vacated.

FACTS
At approximately 2:00 A.M. on May 10, 1987, Billy Wells, the Manager of a Taco Bell restaurant in Lafayette, noticed Trahan's automobile as it ran up a back sidewalk and knocked out a drain grating as Trahan was making a 360 turn to go through the restaurant's drive-through window. Trahan then backed off the curb, proceeded to the restaurant menu board where he placed his order, and then pulled up to the window to pick up his order. Trahan then parked his automobile in a space in the Taco Bell parking lot.
Approximately two hours after first observing Trahan's car, Wells noticed the car was still parked in Taco Bell's parking lot. The engine was not running and the lights were off. Instead of checking the automobile himself, Wells phoned the police. When the police arrived, Trahan was observed sleeping in the vehicle, leaning against the door with one arm hanging out the window and a beer can between his legs.
Trahan was then awakened by officers and requested to step out of his vehicle and produce his driver's license. Officer Menard detected a strong odor of alcohol on *74 his breath, observed that he had glassy and bloodshot eyes, slurred speech, and a lack of balance.
Officer Menard then requested that Trahan perform a series of field sobriety tests. After instructing Trahan on how to perform the one leg stand test, Trahan performed the test. Testifying on Trahan's performance on the test, Officer Menard stated:
"He did it in an unsure, swaying manner. When he began the test, he counted to six (6), at which time he lost his balance and placed his foot down. He began again from six (6). And on the count of seven (7), he again lost his balance and placed his foot down, swaying and raising his arms. He then picked it up again and counted to ten (10), at which time he lost his balance and began to fall over. At that time, Officer Firmin stopped him from falling over. Officer Firmin had placed himself behind the subject for in case that would happen. The test was concluded at that time."
The next test performed by Trahan was the finger-to-nose-tip test. When Trahan performed this test with his left finger, he touched the top of his nose rather than the tip. With his right finger, he successfully touched the tip of his nose.
Finally, Trahan was given instructions on how to perform the walk and turn test. Again, testifying on Trahan's performance of this test, Officer Menard stated:
"... Once he started the test, he walked nine (9)correction, twelve (12) steps instead of nine (9) steps. On the ninth step, he lost his balance and started to come off the line, at which time he placed his hand against Officer Firmin's unit, which was next to where we were doing the test. Upon completing his twelfth step, he turned around making an improper turn, and he came back ten (10) steps. On his return on the count of seven (7) and eight (8), he lost his balance and stepped off the line.".
After the performance of the field sobriety tests, Trahan was placed under arrest and transported to the police department.
Before leaving the scene, Officer Menard checked the area around the vehicle for alcoholic beverage containers but found none. Prior to waking Trahan, he had looked inside the vehicle with a flashlight and had observed no alcoholic beverage containers other than the can of beer between Trahan's legs. An inventory search of the vehicle or the trunk was not performed. The manager of Taco Bell testified that no alcoholic beverages were sold at the restaurant but there was no testimony on behalf of the State as to whether or not alcoholic beverages were sold in the vicinity of the Taco Bell.
At the police station, Trahan performed a second series of field sobriety tests. He performed well on two out of three of these tests, and his performance was improved on the third test, the walk and turn test. After the tests were concluded, Officer Menard interviewed Trahan. Officer Menard testified that he believed the first question he asked Trahan was if Trahan was operating a motor vehicle, and Trahan replied that he was. He then asked Trahan where he was going and Trahan stated that he was going home. He also asked Trahan where he had come from and what time he had left, and Trahan responded that he had come from the north side of town but did not know what time he had left. In response to further inquiry, Trahan stated that he had consumed three or four beers at his mother's house on the north side of town.
After the interview was concluded, Trahan submitted to a breath test which resulted in a reading of .158 grams percent (.158 gm.%) alcohol concentration.

SUFFICIENCY OF THE EVIDENCE
Trahan urges, as his first assignment of error, that the State's evidence was insufficient to support a conviction for operating his vehicle in an intoxicated state. We agree.
The standard for reviewing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of *75 the crime beyond a reasonable doubt. Additionally, when the State, as in this case, relies upon circumstantial evidence, the evidence must exclude every reasonable hypothesis of innocence. See, LSA-R.S. 15:438.
The issue to be resolved is whether the above recited facts support the trial judge's finding that Trahan operated his vehicle in an intoxicated state. Admittedly, Trahan was operating his vehicle at approximately 2:00 A.M. He also admitted to having three or four beers earlier in the evening and was found with a half-empty can of beer in his possession. Additionally, Trahan was found to be intoxicated more than two hours after he was seen driving his vehicle.
We find that these facts are insufficient to exclude every reasonable hypothesis, other than that Trahan was intoxicated when seen operating his vehicle. We would not care to envision the floodgates which would open if the State merely had to show that a defendant had driven a vehicle within hours of an alcohol breath test showing intoxication in order to sustain a conviction for driving while intoxicated. As stated by the Louisiana Supreme Court in State v. Lindinger, 357 So.2d 500, 502 (La.1978), (quoting Thomas v. State, 277 Md. 314, 353 A.2d 256, 262 (1976)):
"When the day arrives, however, when a person may be convicted on the basis of suspicion alone, liberty will have vanished from the land. Under our system of justice it was incumbent upon the State to prove the elements of the crime."
The facts presented in this case do not show when the alcohol was consumed by Trahan, whether Trahan was in his car during the two hours it was parked at Taco Bell, or whether alcoholic beverages were served within walking distance of Taco Bell. These facts, in addition to the fact that there was no inventory taken of the vehicle to determine whether alcoholic beverage containers were in the vehicle, do not negate the reasonable hypothesis that Trahan became intoxicated after operating the vehicle. Conversely, the record does not reveal whether Trahan's Taco Bell trash was found in the automobile. Therefore, the evidence does not exclude the possibility that Trahan had thrown away both his empties and paper trash after he ate his meal.
Finally, the State offered no scientific evidence as to the rate at which the body metabolizes alcohol. This evidence may have aided the Court in determining Trahan's alcohol level at the time he drove his vehicle into Taco Bell. Without it, we are left with mere speculation, insufficient to convict.
Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could not have found, beyond a reasonable doubt, that Trahan was operating his vehicle in an intoxicated state. It is our opinion that the circumstantial evidence adduced by the State fails to exclude a number of reasonable hypotheses of Trahan's innocence. We conclude that the State did not exclude the reasonable hypothesis that Trahan became intoxicated, either in the car or outside the car, after he parked his vehicle at Taco Bell. Alternatively, without scientific evidence, the Court may not presume that a defendant found intoxicated at a given time would, beyond a reasonable doubt, be intoxicated two or more hours earlier. Finally, the evidence does not exclude the possibility, without scientific evidence to the contrary, that Trahan consumed the alcohol, drove his car to Taco Bell, and felt the effects and/or became intoxicated after he parked the vehicle. As such, the State has failed to prove, beyond a reasonable doubt, that Trahan operated a motor vehicle while intoxicated.
Defendant has urged other assignments of error; however, because of our reversal of his conviction for the above stated reasons, the other assignments of error are moot.
WRIT GRANTED AND MADE PEEMPTORY:
For the foregoing reasons, Trahan's conviction for first offense driving while intoxicated *76 is reversed and the corresponding sentence is hereby vacated.
REVERSED AND RENDERED.