940 A.2d 211

**Dwight DUKES**

v.

**STATE of Maryland.**

**No. 66, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

Jan. 31, 2008.

J. Dennis Murphy, Jr., Annapolis, for appellant.

Diane E. Keller (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, for appellee.

Panel: HOLLANDER, BARBERA, WOODWARD, JJ.

HOLLANDER, J.

Following a bench trial in the Circuit Court for Anne Arundel County on January 16, 2007, Dwight Dukes, appellant, was convicted of driving or attempting to drive while impaired by alcohol, in violation of Md.Code (2006 & 2007 Supp.), § 21–902(b) of the Transportation Article ("Transp."), and driving on a revoked license, in violation of Transp. § 16–303(d). The court sentenced appellant to a one-year term of imprisonment for driving while impaired and to a consecutive, suspended term of two years for driving while revoked.

Dukes presents a single question for our review: "Was the evidence sufficient to sustain the conviction[s]?" For the reasons that follow, we hold that it was, and shall therefore affirm.

## I. FACTUAL & PROCEDURAL BACKGROUND[1]

The underlying incident occurred on October 3, 2006. At trial, the court was informed that the parties disputed whether appellant was "driving" at that time, within the meaning of the relevant statutes. Appellant waived a jury trial and proceeded on an agreed statement of facts. The court read into the record the arresting officer's report, as follows:

"On 10/3/06, at approximately 04:47 hours["]—so that is 4:47 in the morning—["]I located an '86 Cadillac" something. "A two-door, grey," with a Maryland registration that is identified here. I won't read it. "On Baydale Drive north and College Parkway. The vehicle was stopped in a right turn lane with its headlights on, but they were dim."

"I had passed the vehicle approximately half an hour before in route to a B & E in progress. It had not moved from that position. I contacted the operator, who was asleep in the driver's seat, and the vehicle keys were on the floor mat below the steering wheel. I woke him and

---

1. Appellant was originally charged in the District Court but prayed a jury trial in that court. Accordingly, the case was transferred to the Circuit Court.

detected a strong odor of an alcoholic beverage emanating from his breath, and his speech was slurred."

"He had trouble locating identif[ication] and handed me his wallet with a Maryland I.D. only. He couldn't find a vehicle registration card. His movements were slow and not fluid. He exited his vehicle to attempt several field tests at the rear...."

According to the officer's report, appellant failed the field sobriety tests and was arrested. He "refused the chemical test...."

Appellant's driving record showed that his driver's license had been revoked on March 20, 1980. Over the years, appellant's revocation had been extended several times, most recently for two years beginning May 25, 2005. In a ruling that appellant does not contest, the court found that appellant had actual knowledge of the revocation, because he had unsuccessfully applied for reinstatement on a number of occasions.

The defense argued that, under *Atkinson v. State,* 331 Md. 199, 627 A.2d 1019 (1993), the evidence was insufficient to support a conviction for driving while impaired. The court rejected that argument, reasoning as follows:

In analyzing the[ ] [*Atkinson* ] factors ... it seems to me that when I consider them all together, the fact that the vehicle is in a travel portion of the road, in a turn lane, and that the car is at that point being manipulated at least to the effect that the lights are on and that the Defendant is in the driver's seat, creates that potentiality, which is what *Atkinson* talks about. The potentiality of him putting the public at risk.

Quite candidly, the public is at risk just by the mere fact that he is sitting there and perhaps somebody might [hit] him.

Moreover, the court disagreed with Dukes's contention that, because the headlights were dim, the vehicle was not operable. It stated:

But I would not find that to be a sufficient concern in terms of deciding the case, and I would not draw the

inference that because the lights were dim you would not be able to start it. I would draw the opposite inference[:] that so long as the lights were on to some degree, there was some ignition available to the Defendant.

This was in October.... [T]he weather hadn't been extremely cold. During those types of circumstances the likelihood that the battery is not going to kick over the car is not all that strong.

Defense counsel then pointed out that the evidence showed the lights on the car had been on for at least a half hour. The court responded:

About a half of an hour. I appreciate that.... The car had been driven there. So presumably [it] had been engaged and the engine had been running. It is not a situation where the car had been sitting for a week or so without being started. So, the amount of ignition power that is necessary to get it restarted is not as great as if the car had been sitting for a long time.

So, I don't consider that to be an element that causes me to have a reasonable doubt that the vehicle was operable, and I think the factors in this case, the location of the vehicle and the location of the Defendant, suggests to me that he fits within the definition of being in actual physical control of the vehicle and that he is not an *Atkinson* exception.

This is not a situation where he was basically in the back taking a snooze in some parking lot and had the radio on or had the ignition on to keep warm. That is the kind of exception that *Atkinson* recognizes, but I don't think it applies in this case.

So based on that, I do find that the Defendant was in actual physical control of the vehicle.

Accordingly, the court ruled: "I do find that the Defendant was in actual physical control of the vehicle. I find that the information contained in the report establishes that the Defendant was also under the influence of alcohol and that he is, therefore, guilty of [Transp. § ] 21–902(b), driving or attempt-

ing to drive while impaired by alcohol." [2]  He was also convicted of driving while his license was revoked, in violation of Transp. § 16–303(d). This appeal followed.

## DISCUSSION

Appellant does not challenge the sufficiency of the evidence to establish that he was intoxicated, nor does he dispute that, at the time in question, his license had been revoked. His sole claim on appeal is that the evidence set forth in the agreed statement of facts was insufficient to support the finding that he was "driving," because, argues appellant, he was not in "actual physical control" of an operable vehicle. We disagree.

In a challenge to the sufficiency of the evidence, the standard of review is well settled. The Court said in *Harrison v. State*, 382 Md. 477, 487–88, 855 A.2d 1220 (2004) (quoting *Moye v. State*, 369 Md. 2, 12–13, 796 A.2d 821 (2002)):

"The standard of review for appellate review of evidentiary sufficiency is whether any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. *See State v. Albrecht*, 336 Md. 475, 478–79 [649 A.2d 336] (1994). We view the evidence in the light most favorable to the prosecution. *See id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 319 [99 S.Ct. 2781, 61 L.Ed.2d 560] (1979) and *Branch v. State*, 305 Md. 177, 182–83 [502 A.2d 496] (1986)). We give 'due regard to the [fact finder's] finding of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses.' *McDonald v. State*, 347 Md. 452, 474 [701 A.2d 675] (1997), *cert. denied*, 522 U.S. 1151 [118 S.Ct. 1173, 140 L.Ed.2d 182] (1998) (quoting *Albrecht*, 336 Md. at 478 [649 A.2d 336] )."

Maryland Rule 8–131(c) is also pertinent:

When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence.

---

**2.** The commitment record states that appellant was found guilty of "(Driving, Attempting to drive) Veh. while impaired by alcohol."

It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

Transp. § 11–114 defines "drive" as follows: "to drive, operate, move, or be in *actual physical control* of a vehicle . . . ." (emphasis added). In *Atkinson v. State*, 331 Md. 199, 627 A.2d 1019 (1993), upon which appellant relies, the Court examined the meaning of the phrase "actual physical control." There, a sheriff's deputy found the defendant inebriated and asleep in his vehicle, which was parked on the shoulder of a road. The keys were in the ignition and the engine was off. *Id.* at 203–204, 627 A.2d 1019. In reasoning equally applicable to the case at bar, the *Atkinson* Court analyzed the definition of "drive" in § 11–114 and made the following observation, *id.* at 206, 627 A.2d 1019 (internal citations omitted):

> "[D]rive" (as a definition), "operate" and "move" are not at issue here, for each of these terms clearly connotes either some motion of the vehicle or some physical movement or manipulation of the vehicle's controls. To "move" a vehicle plainly requires that the vehicle be placed in motion. . . . "[T]he term 'driving'. . . mean[s] . . . steering and controlling a vehicle while in motion; the term 'operating,' on the other hand, is generally given a broader meaning to include starting the engine or manipulating the mechanical or electrical devices of a standing vehicle."

The Court considered the meaning of "actual physical control" of a vehicle. It declined to adopt the majority view, which is that " '[a]s long as a person is physically or bodily able to assert dominion in the sense of movement by starting the car and driving away, then he has substantially as much control over the vehicle as he would if he were actually driving it.' " *Atkinson*, 331 Md. at 212, 627 A.2d 1019 (quoting *Adams v. State*, 697 P.2d 622, 625 (Wyo.1985)).[3] The Court character-

---

3. The *Atkinson* Court cited cases from the District of Columbia, Minnesota, North Dakota, Oklahoma, and Wyoming for this view, while citing Arizona, Illinois, and Utah cases for the less "inflexible" construction

ized this view as "excessively rigid," reasoning that "intoxicated persons sitting in their vehicles while in possession of their ignition keys would, regardless of other circumstances, always be subject to criminal penalty...." *Atkinson,* 331 Md. at 212, 627 A.2d 1019. In its view, "this construction effectively creates a new crime, 'Parked While Intoxicated.' " *Id.* (citing, with approval, *Petersen v. Dept. of Public Safety,* 373 N.W.2d 38, 40 (S.D.1985) (Henderson, J., dissenting)).

Instead, the *Atkinson* Court determined that the Legislature did not intend to punish criminally an intoxicated person who uses his vehicle merely to "sleep it off." *Atkinson,* 331 Md. at 214, 627 A.2d 1019. Rather, it concluded that the General Assembly "intended to differentiate between those inebriated people who represent no threat to the public because they are only entering their vehicles as shelters until they are sober enough to drive and those people who represent an imminent threat to the public by reason of their control of a vehicle." *Id.* at 216, 627 A.2d 1019.

In this regard, the Court identified six non-exhaustive factors relevant in determining whether an individual in a vehicle has "actual physical control" over the vehicle, or is merely using it as shelter:

1) whether or not the vehicle's engine is running, or the ignition on;

2) where and in what position the person is found in the vehicle;

3) whether the person is awake or asleep;

---

adopted by the Court. 331 Md. at 211–15, 627 A.2d 1019. *See U.S. v. McFarland,* 369 F.Supp.2d 54, 58–60 (D.Me.2005) (surveying cases, and finding that "a significant majority" of state courts, including those in Idaho, Illinois (overruling the prior case cited in *Atkinson),* New Mexico, North Dakota, Oklahoma, South Dakota, Tennessee, Vermont, and Wyoming, have adopted the *Adams* view, while "a small minority," including Arkansas, have adopted the *Atkinson* approach taken by Maryland; declining to apply *Atkinson* in interpretation of similar language in federal regulation), *aff'd,* 445 F.3d 29 (1st Cir.2006). *See also* James O. Pearson, Jr., Annotation, *What Constitutes Driving, Operating, or Being in Control of Motor Vehicle for Purposes of Driving While Intoxicated Statute or Ordinance,* 93 A.L.R.3d 7 (1979 & 2007 Supp.).

4) where the vehicle's ignition key is located;

5) whether the vehicle's headlights are on;

6) whether the vehicle is located in the roadway or is legally parked.

*Id.*

The Court cautioned that the inquiry "will inevitably depend on the facts of the individual case," and that "[n]o one factor alone will necessarily be dispositive. . . ." *Id.* Rather, "[c]ourts must in each case examine what the evidence showed the defendant was doing or had done, and whether these actions posed an imminent threat to the public." *Id.* at 216–17, 627 A.2d 1019. The *Atkinson* Court seemed to suggest that the factors are not all of equal weight, stating: "Perhaps the strongest factor . . . is whether there is evidence that the defendant started or attempted to start the vehicle's engine." *Id.* at 217, 627 A.2d 1019. Further, it explained that, "once an individual has started the vehicle, he or she has come as close as possible to actually driving without doing so. . . ." *Id.* Of import here, the Court also said that "the location of the vehicle can be a determinative factor in the inquiry because a person whose vehicle is parked illegally or stopped in the roadway is obligated by law to move the vehicle. . . ." *Id.*

Applying the factors to the case before it, the *Atkinson* Court observed that, although the defendant was in the driver's seat and the keys were in the ignition, the vehicle was legally parked, the ignition was off, and the defendant was fast asleep. *Id.* On balance, the Court concluded that there was reasonable doubt that the defendant was in "actual physical control" of his vehicle. *Id.*

In the instant case, appellant argues that the circuit court misapplied the *Atkinson* factors and, when properly considered, the factors compelled his acquittal. He observes that the *Atkinson* factors are in numerical equipoise: in favor of appellant are the facts that appellant was asleep; the key was not in the ignition; and the headlights were on but were "dim"; in the State's favor, appellant was in the driver's seat, the headlights were on; and the vehicle was located in the

roadway.[4] He asserts: "Logically, even by a preponderance of the evidence standard, this might resolve the case against the party with the burden of proof in the case." Appellant concedes, however, that "resolution of the issue involves more than just a score analysis of the . . . factors. . . ." As the *Atkinson* Court made clear, "the primary focus" in the court's determination of "actual physical control" turns on "whether it is reasonable to assume that the person will, while under the influence, jeopardize the public by exercising some measure of control over the vehicle." *Atkinson,* 331 Md. at 217, 627 A.2d 1019.

According to appellant, the "critical fact" here is that his headlights had been on for at least a half-hour (between the time the officer initially saw appellant's vehicle and the time the officer returned to investigate), without the engine running, which would have depleted the battery in his vehicle. In appellant's view, the fact that his headlights had grown dim suggests that, under these circumstances, there was "considerable doubt" as to whether "the car could have been started and driven *at the time charged.*" (Emphasis added.)

Appellant maintains that under *Atkinson* it was "not reasonable to assume that Appellant could have . . . presented a threat to the highway. . . ." He draws our attention to the circuit court's "inference" finding on this issue: "I would not draw the inference that because the lights were dim you would not be able to start it. I would draw the opposite inference[:] that so long as the lights were on to some degree, there was some ignition available to the Defendant." Appellant complains that "whether there was *enough* charge to actually start the engine is a matter left to complete speculation under the circumstances," (emphasis in original), and that the circuit court "effectively shift[ed] the burden of proof to the defen-

---

**4.** In his brief, appellant describes the vehicle as "parked on the side of the roadway and not lawful [sic] parked." The facts described in the arresting officer's report, to which appellant stipulated, are that "[t]he vehicle was stopped in a right turn lane. . . ." At trial, defense counsel explicitly conceded that "obviously the vehicle is located in the roadway. . . ."

dant to prove that the battery was too far drained to start the vehicle." "Accordingly," argues appellant, "no rational trier of fact could have concluded beyond a reasonable doubt that Appellant could have started the vehicle and assumed control over it had he woken up and attempted to do so."

In response, the State makes two points. First, the State quotes *Pinkney v. State*, 151 Md.App. 311, 329, 827 A.2d 124 (2003), for the proposition that "[t]he primary appellate function in respect to evidentiary inferences is to determine whether the trial court made reasonable, *i.e.*, rational, inferences from extant facts. . . . [R]esolving . . . conflicting evidentiary inferences is for the fact finder." (Internal citation omitted.) According to the State, the evidence "plainly supported the inferences drawn by the trial court," and the court "was not clearly erroneous in concluding that the vehicle could be restarted." Second, and "[m]ost importantly," the State notes that "this patently was not a situation where Dukes had taken shelter in the car, off the public roadway; quite the contrary, the vehicle was stopped in the turn lane of a public street." Under *Atkinson*, argues the State, this is a "determinative factor," because appellant was obligated by law to move his vehicle out of the roadway, "and because of this obligation could more readily be deemed in 'actual physical control' than a person lawfully parked on the shoulder or on his or her own property." *Atkinson*, 331 Md. at 217, 627 A.2d 1019.

Maryland courts have long drawn a distinction between rational inference from evidence, which is legitimate, and mere speculation, which is not. *See, e.g., Benedick v. Potts*, 88 Md. 52, 55, 40 A. 1067 (1898) ("[A]ny . . . fact . . . may be established by the proof of circumstances from which its existence may be inferred. But this inference must, after all, be a legitimate inference, and not a mere speculation or conjecture. There must be a logical relation and connection between the circumstances proved and the conclusion sought to be adduced from them."). In *Bell v. Heitkamp*, 126 Md.App. 211, 728 A.2d 743 (1999), we endorsed the following test to distinguish between inference and speculation: " 'where from the facts most favorable to the [party with the burden of proof] the

nonexistence of the fact to be inferred is just as probable as its existence (or more probable than its existence), the conclusion that it exists is a matter of speculation, surmise, and conjecture, and a jury will not be permitted to draw it.'" *Id.* at 224, 728 A.2d 743 (quoting *Chesapeake & Potomac Tel. Co. v. Hicks,* 25 Md.App. 503, 524, 337 A.2d 744, *cert. denied,* 275 Md. 750 (1975)).

Here, as the trial court reasoned, there was enough charge in the battery to light the car's headlights, even if they were growing dim. Moreover, the court recognized that "the car had been driven there. So presumably had been engaged and the engine had been running. It is not a situation where the car had been sitting for a week or so without being started." Under these circumstances, we cannot say the judge was clearly erroneous in concluding that the car was operable at the time of appellant's arrest.

Indeed, in *Gore v. State,* 74 Md.App. 143, 536 A.2d 735 (1988), we rejected the argument that the State must present direct evidence that the vehicle was operable in order to prove beyond a reasonable doubt that a defendant was in actual physical control of a motor vehicle. There, we said, *id.* at 149, 536 A.2d 735:

> [I]n this case, it was established that the car key was in the ignition in the "on" position, with the alternator/battery light lit; that the gear selector was in the "drive" position; and that the engine was warm to the touch. We hold that this additional evidence is sufficient to support a finding by the trier of fact that appellant was "driving." Appellant's argument based upon the officer's failure, and indeed his inability, to testify, firsthand, to having observed an engine in the car or a transmission or to having seen the car move does not undermine the holding. *It is axiomatic that the necessary rational inferences to support a finding of guilt beyond a reasonable doubt may be drawn by the trier of fact from circumstantial evidence.*

(Emphasis added.)

Here, as in *Gore,* the vehicle's operability could be inferred from the circumstances. As in *Gore,* there was evidence that

the vehicle's lights were lit and that it had been recently driven.

At oral argument, appellant placed great reliance on *Thomas v. State*, 277 Md. 314, 353 A.2d 256 (1976), suggesting that the facts of *Thomas* were "strikingly similar" to the case at bar. We are not persuaded that *Thomas* controls this case. In *Thomas*, the defendant was discovered by police intoxicated in his vehicle, which was parked "with lights on standing on the left paved shoulder" of a highway off-ramp. *Id.* at 315, 353 A.2d 256. The defendant "was either asleep or passed out on the driver's side of the vehicle. . . . [T]he windows were up. The keys were in the ignition. The motor was off." *Id.* The defendant was tried and convicted of driving while impaired by alcohol, *id.* at 316, 353 A.2d 256, but the Court of Appeals reversed. The Court said, *id.* at 325–26, 353 A.2d 256:

> All the evidence in this case proves is that Thomas was in a vehicle by the side of the road, possibly intoxicated, at an early hour in the morning. Left to conjecture is whether he drove the vehicle to that location after imbibing alcohol or whether he had parked it there, been picked up by some other individual, and then dropped off in the same spot. . . . We do not know how long Thomas had been at this location. Also left to conjecture is whether the vehicle was operable. We may suspect that Thomas did not drop down from outer space into the vehicle in question, that he drove the vehicle to that location, and that when he drove it he was under the influence of alcohol. When the day arrives, however, when a person may be convicted upon the basis of suspicion only, liberty will have vanished from the land. Under our system of justice it was incumbent upon the State to prove the elements of the crime. In this instance it has utterly failed to prove the *corpus delicti* of the crime, that Thomas drove the vehicle on a public highway while his driving ability was impaired by alcohol. In fact, it has yet to prove that he drove the vehicle.

In this case, appellant concedes that he was parked in the roadway, while the defendant in *Thomas* was parked on the shoulder. But, appellant contends that, as in *Thomas*, "[l]eft

to conjecture is whether he drove the vehicle to that location after imbibing alcohol.... Also left to conjecture is whether the vehicle was operable." *Id.* at 325, 353 A.2d 256. Appellant suggests that in this case the State placed evidence in the record that raised a reasonable doubt as to the vehicle's operability, in the form of the officer's notes that the car's headlights had been on for at least a half-hour and were dim. In his view, the State established facts that raised a reasonable doubt as to the vehicle's operability, and the State then was required to advance further evidence to dispel that doubt.

What appellant fails to appreciate is that, as the Court recognized in *Atkinson, Thomas* was decided under "a prior version of the statute...." *Atkinson,* 331 Md. at 206, 627 A.2d 1019. That earlier enactment made it "'unlawful for any [intoxicated] person *to drive or attempt to drive **or to be in** actual physical control* of any vehicle....'" *Id.* at 206, 627 A.2d 1019 (quoting Md.Code (1957, 1970 Repl.Vol., 1974 Cum. Supp.), Art. 66½, § 11–902(b) (italics in *Atkinson,* boldface added). The *Thomas* Court "construed the statute as having two distinct prongs, a 'driving' prong and an 'actual physical control' prong." *Atkinson,* 331 Md. at 206, 627 A.2d 1019. The statute did not, at that time, contain the modern, omnibus definition of "drive," which, as we have noted, encompasses "driving," "moving," "operating," and being in "actual physical control" of a vehicle. *Atkinson,* 331 Md. at 207 n. 5, 627 A.2d 1019.

Indeed, the *Thomas* Court noted that "[t]he State devoted a considerable portion of its brief to argument that under the facts and circumstances here Thomas was 'in actual physical control' of the vehicle and thus in violation of the statute." *Thomas,* 277 Md. at 316, 353 A.2d 256. The *Thomas* Court rejected the State's argument, however, reasoning, *id.* at 317, 353 A.2d 256:

> [W]hen the General Assembly added the words 'in actual physical control of any vehicle' to the statute it must have intended a meaning different from driving or attempting to drive. The argument of the State here that Thomas was in

actual physical control of the vehicle is without merit for a very simple reason, namely, he was never so charged.

Whether the appellant in *Thomas* had been in "actual physical control" of his vehicle was irrelevant, in the Court's view, "because the State had only charged Thomas with 'driving,' not with being in 'actual physical control' of his vehicle." *Atkinson*, 331 Md. at 207, 627 A.2d 1019. That reasoning has no application with regard to the current statute. The statute had been amended by the time *Atkinson* was decided, and the *Atkinson* Court declined to apply *Thomas* to the facts of that case. Notably, the Court observed: "The present statute avoids this potential pitfall in charging.... Under this [modern] statutory design, a person must only be charged with 'driving' under § 21–902(b), this charge encompassing all the specific definitions of 'drive' set out in § 11–114." *Atkinson*, 331 Md. at 207 n. 5, 627 A.2d 1019.

Consequently, we are satisfied that appellant's reliance on *Thomas* is misplaced. Under the current statute, a person commits the crime of "driving" while intoxicated when he is intoxicated while in "actual physical control" of his vehicle, even if it is "left to conjecture" that he actually "drove" the vehicle, in the narrower sense, at some earlier time. As the State correctly points out, under *Atkinson* the fact that appellant's vehicle was stopped in the roadway was properly a "determinative factor" in the "actual physical control" analysis. The trial court recognized this when it said: "Quite candidly, the public is at risk just by the mere fact that he is sitting there and perhaps somebody might [hit] him."

In any event, the *Atkinson* Court opined that, even if a defendant was not in "actual physical control" of a vehicle at the time of his arrest, he could still be convicted of driving while intoxicated if circumstantial evidence proved beyond a reasonable doubt that he had driven the vehicle while intoxicated at an earlier time. The Court explained, *id.* at 218–19, 627 A.2d 1019 (internal citations omitted):

It is important to bear in mind that a defendant who is not in "actual physical control" of the vehicle at the time of

apprehension will not necessarily escape arrest and prosecution for a drunk driving offense. A person may also be convicted under § 21–902 if it can be determined beyond a reasonable doubt that before being apprehended he or she has actually driven, operated, or moved the vehicle while under the influence.... Those were the facts in ... *Gore v. State* ... discussed *supra,* where the court concluded that evidence of the ignition key in the "on" position, the glowing alternator/battery light, the gear selector in "drive," and the warm engine, sufficiently supported a finding that the defendant had actually driven his car shortly before the officer's arrival. Thus, our construction of "actual physical control" as permitting motorists to "sleep it off" should not be misconstrued as encouraging motorists to try their luck on the roadways, knowing they can escape arrest by subsequently placing their vehicles "away from the road pavement, outside regular traffic lanes, and ... turn[ing] off the ignition so that the vehicle's engine is not running."

\* \* \*

In the instant case, had there been evidence to establish that Atkinson had driven prior to his apprehension, he might properly have been convicted—not because of what he was doing when the officer arrived on the scene, but because of what the factfinder could have inferred he had done previously, *i.e.,* actually drive, operate, or move his vehicle while intoxicated. While many forms of circumstantial evidence potentially could have lead [sic] to this conclusion, no such evidence was adduced in Atkinson's case. There is no evidence that Atkinson did anything but climb into his vehicle, put the key in the ignition, and go to sleep.

Here, the fact that appellant was intoxicated and asleep in the driver's seat of a vehicle that was stopped *in the roadway,* with its lights on, is powerful circumstantial evidence that appellant drove the vehicle to that location while intoxicated. There was also ample evidence to convince the fact finder that appellant drove on a revoked license.

JUDGMENTS OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.