999 A.2d 986

Clavon SMITH

v.

STATE of Maryland.

No. 105, Sept. Term, 2009.

Court of Appeals of Maryland.

July 23, 2010.

George E. Burns, Jr., Asst. Public Defender (Elizabeth L. Julian, Acting Public Defender, of Baltimore, MD), on brief, for petitioner.

Sharon Stanley Street, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, of Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

HARRELL, J.

Reminiscent of a scene from a Cheech & Chong movie,[1] Baltimore City police officers, on 6 December 2006, executed a search warrant on a dwelling at 1932 Lanvale Street where the occupants on one floor were found shrouded in a haze of marijuana smoke. Despite the appearance of the police, Clavon Smith ("Petitioner"), one of those present, behaved as though everything remained "groovy." Smith was seated in a chair at a table within arm's reach of a smoldering marijuana blunt and next to another chair over which was draped a jacket with fifteen baggies of marijuana in one of its pockets.[2] Although convicted of possession of marijuana in violation of Maryland Code (2002 & Supp.2009), § 5–601(a)(1) of the Criminal Law Article,[3] Petitioner claims that the State did not prove beyond a reasonable doubt that he possessed any of the marijuana. We shall hold that the evidence was sufficient as to the marijuana blunt to support his conviction for a single count of simple possession of marijuana.

## I. The Facts (and Nothing but the Facts)

The facts in this case are not in dispute. On 29 November 2006, as a result of his observations of the dwelling (and goings-on in and around the dwelling) at 1932 Lanvale Street in Baltimore City, Detective David Shields of the Baltimore City Police Department, obtained a search warrant for the

---

1. For those not familiar with them, Richard "Cheech" Marin and Tommy Chong (Cheech and Chong) are a comedy duo whose recreational drug ("stoner") humor became popular in the 1970s with the release of several comedy albums, and which led to a string of movies, beginning with "Up in Smoke" in 1978, that portrayed recreational drug use in nonthreatening situations. Although the team broke up in 1987, they reunited solidly in 2008 and continue to tour and make movies and television appearances to the present day.

2. "Blunt" is a popular term for a marijuana cigar. A police witness testified that to create a blunt the smoker obtains a legitimate cigar, removes the tobacco, and substitutes marijuana for the tobacco. The smoker then rolls the wrapper and the marijuana back into the shape of a cigar and lights up.

3. All statutory references hereafter will be to the Criminal Law Article.

premises.[4,5] Detective Shields and another detective returned to 1932 Lanvale Street on 6 December 2006. At approximately 7:30 P.M. on that day, they observed groups of people going in and out of the front entrance of 1932 Lanvale Street. Shields observed a "heavy increase in vehicle traffic entering the block. [The vehicles] would stop and congregate with persons at that dwelling or in the front of that dwelling." [6] The police observed the residence for approximately thirty minutes. At that point, Detective Shields left the area and went back to the police station to alert his sergeant and the rest of the members of his unit to the suspected drug activity so that they could muster further manpower to execute the search warrant. At approximately 8:10 P.M., the police returned to 1932 Lanvale Street to execute the warrant. The police entered the premises, without force, because the door was unlocked.

Upon entering the residence, the police were "immediately engulfed with a heavy cloud of marijuana filtering all through the first floor." Sergeant Fesser described the marijuana smoke as a "haze." The police conducted a sweep through the house to secure it. They ascertained that there were approximately 12–14 people present in the house.

When the police entered the middle room,[7] they observed Petitioner, along with four other individuals, seated in chairs at a table. A marijuana blunt was burning in an ashtray in the center of the table. The blunt had burned down to a small portion, which the police saved for possible future evidentiary use. All four of the individuals seated at the table, including Petitioner, were within arm's reach of the blunt. According to

---

4. Detective Shields and Sergeant Kevin Fesser, both of the Baltimore City Police Department, testified at trial on behalf of the State.

5. The address is referred to in the record as 1932 Lanvale Street and 1932 Landvale Street. We shall refer to it as 1932 Lanvale Street.

6. Detective Shields did not observe Petitioner enter or exit 1932 Lanvale Street on November 29.

7. This room is also referred to in the record as the dining room.

Detective Shield's testimony, Petitioner "appeared relaxed just going with the program. [He was] not excited at all" at the intrusion of the police.

The police gathered all the occupants into the front room where they read the suspects their *Miranda* rights.[8] The police asked the individuals if they had knowledge of the presence of any additional controlled dangerous substance ("CDS"), large sums of money, or weapons. No one responded. A search of the premises ensued, during which Sergeant Fesser recovered from the pocket of a men's black leather jacket, found on the back of a chair at the table where Petitioner was seated, a black plastic bag containing 15 red Ziploc bags of marijuana. Smith had not been seated in that chair. The person who sat in the chair over which the jacket had been draped pointedly did not claim ownership of the jacket, nor did Smith. The police also recovered the following sums of money in cash from three of the other individuals found in the dwelling: Evette Sterling, $711; Malcolm Rogers, $150; and Emery Jones, $415.

Detective Shields arrested the individuals whom he believed to be in possession of the marijuana, including Petitioner and Sterling, who was the "official" tenant at 1932 Lanvale Street.[9] In a search of Petitioner's person, the police did not recover any CDS, CDS paraphernalia, or a large quantity of cash. Smith was charged with possession of marijuana in violation of § 5–601(a)(1).[10] He received a jury trial in the Circuit Court for Baltimore City.

---

**8.** *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**9.** It appears from the record that the State entered the charges against Sterling as *nolle prosequi.*

**10.** Section 5–601(a)(1) provides:
(a) In general.—Except as otherwise provided in this title, a person may not:
(1) possess or administer to another a controlled dangerous substance, unless obtained directly or by prescription or order from an authorized provider acting in the course of professional practice. . . .

At the close of the State's case, Smith moved for a judgment of acquittal, arguing that the State did not prove that he had knowledge of the contents of the jacket. With regard to the blunt, Smith argued that his presence at the table was not sufficient to prove that he exercised dominion or control over the blunt. The trial court, although expressing some doubt as to whether the State presented enough evidence to establish possession with respect to the marijuana in the jacket,[11] ultimately denied the defense motion.

Sterling was the only witness called by the defense. She testified that she returned home from work on 6 December 2006 at approximately 7:10 P.M. She saw Petitioner in the dining room wearing a jacket. She testified that he was at her house that evening to purchase an apparently custom shirt from her son. When she entered the home, she observed Petitioner standing behind her son, watching him "put the finishing touches on the shirt." She also testified that she saw a chair with a black leather jacket on the back of it. At that time, according to Sterling, no one, including Petitioner, was smoking marijuana. She went upstairs to her bedroom and remained there until the police arrived. She did not smell the marijuana smoke until the police brought her downstairs.

Smith renewed his motion for judgment of acquittal at the conclusion of the defense's case-in-chief. He argued to the trial court that the State did not establish that he had knowledge of the contents of the jacket or that he exercised dominion or control over the blunt in the ashtray. The State countered that there was sufficient evidence that Smith was in constructive possession of both the marijuana in the jacket and the blunt. Although the relevant portion of the trial transcript is missing from the record, presumably the trial court denied the defense motion because the case went to the jury.

After deliberating for a day, the jury returned a guilty verdict to the single charge of possession of marijuana. The

---

11. The trial court stated that this was a "close question."

court sentenced Petitioner to one year of imprisonment, with all but sixty days suspended.

Petitioner filed a timely appeal to the Court of Special Appeals. In his brief to the intermediate appellate court, he argued that the evidence was insufficient to sustain the conviction of possession of marijuana.[12] That court affirmed the conviction in an unreported opinion, holding that the evidence was sufficient to sustain the conviction.

We granted Smith's petition for a writ of certiorari, 414 Md. 330, 995 A.2d 296 (2009), to consider the following question:

Is proof of presence in a house where marijuana is being smoked sufficient to sustain a conviction for possession of marijuana?

For the reasons set forth below, we shall affirm the judgment of the Court of Special Appeals and hold that the evidence was sufficient, as to the blunt, to sustain Smith's conviction.

## II. Standard of Review

Petitioner frames the applicable standard of review based on selected language found in *Jones v. State*, 395 Md. 97, 909 A.2d 650 (2006), and *Dukes v. State*, 178 Md.App. 38, 940 A.2d 211 (2008). In *Jones*, it is stated that, although a conviction may rest solely upon circumstantial evidence, " 'a conviction upon circumstantial evidence *alone* is not to be sustained unless the circumstances, taken together, are inconsistent with any reasonable hypothesis of innocence.' " *Id.* at 120, 909 A.2d at 663 (emphasis in original) (quoting *Oken v. State*, 327 Md. 628, 663, 612 A.2d 258, 275 (1992)). Similar statements are found in *Bible v. State*, 411 Md. 138, 157, 982 A.2d 348, 359 (2009) (plurality opinion) (quoting *Taylor v. State*, 346 Md. 452, 458, 697 A.2d 462, 465 (1997)) (" '[W]hen the evidence equally supports two versions of events, and a finding of guilt

---

12. In the Court of Special Appeals, Petitioner argued also that the trial court erred in permitting the prosecution to question Sterling about an allegation that the police arrested Petitioner for using marijuana in her residence. The intermediate appellate court held that defense counsel did not preserve the issue for appellant review because he failed to object at trial. Petitioner did not petition us for review of this issue.

requires speculation as to which of the two versions is correct, a conviction cannot be sustained.' "); *Moye v. State,* 369 Md. 2, 13, 796 A.2d 821, 827 (2002) (quoting *Wilson v. State,* 319 Md. 530, 537, 573 A.2d 831, 834 (1990)) ("A conviction based solely on circumstantial evidence should be sustained only where 'the circumstances, taken together, are inconsistent with any reasonable hypothesis of innocence.' "); and *Taylor,* 346 Md. at 458, 697 A.2d at 465 (1997) ("[W]hen the evidence equally supports two versions of events, and a finding of guilt requires speculation as to which of the two versions is correct, a conviction cannot be sustained.").

In *Jones,* the defendant was convicted of second degree burglary. *Id.* at 101, 909 A.2d at 652. At trial, the State did not present any evidence, direct or circumstantial, that there had been a breaking (a required element of burglary), except for his unauthorized presence in the building and some evidence that the kitchen might have been the entry point. *Id.* at 118–20, 909 A.2d at 662–63. We held that it would be pure speculation to conclude that there had been a breaking based solely upon his unauthorized presence in the building. *Id.* at 120, 909 A.2d at 663. There was no evidence upon which to base an assertion that there was a breaking. Accordingly, there was insufficient evidence to sustain Jones's conviction for second degree burglary. *Id.*

In *Dukes,* the Court of Special Appeals endorsed the following test be applied when reviewing the sufficiency of the evidence:

"where from the facts most favorable to the [party with the burden of proof] the nonexistence of the fact to be inferred is just as probable as its existence (or more probable than its existence), the conclusion that it exists is a matter of speculation, surmise, and conjecture, and a jury will not be permitted to draw it."

*Id.* at 47–48, 940 A.2d at 217 (alteration in original) (quoting *Bell v. Heitkamp, Inc.,* 126 Md.App. 211, 224, 728 A.2d 743, 749 (1999)). Dukes challenged the sufficiency of the evidence to support the trial court's conclusion that he was driving an

operable vehicle at the time he was arrested for driving while impaired by alcohol. *Id.* at 42, 940 A.2d at 213. There was no direct evidence that Dukes was driving his vehicle. Finding that the judge was not clearly erroneous in concluding that the vehicle was operable at the time of Dukes's arrest, the intermediate appellate court upheld his conviction. *Id.* at 52, 940 A.2d at 220. We note that the court accepted the inferences drawn by the trial judge, despite the fact that another rational fact-finder may have drawn different inferences.

Petitioner's highlighted language in these cases notwithstanding, it is well established that the standard that Smith champions is not the focus of the standard to be applied when reviewing the sufficiency of the evidence in criminal cases. We stated in *State v. Smith,* 374 Md. 527, 534, 823 A.2d 664, 668 (2003), that the finder of fact has the "ability to choose among differing inferences that might possibly be made from a factual situation. . . . " That is the fact-finder's role, not that of an appellate court. Professor Douglas Lind explains that "[t]he term 'inference' refers to the logical process that takes place when, within the context of a group of propositions (i.e., an 'argument'), one proposition (the 'conclusion') is arrived at and affirmed on the basis of other propositions (the 'premises') that are accepted at the beginning point of the process." Douglas Lind, *Logic and Legal Reasoning* 4–5 (2001). In other words, "[a]n inference is a factual conclusion that can rationally be drawn from other facts." Clifford S. Fishman, *Jones on Evidence* § 4:1 (7th ed. 1992 & Supp.2009–2010). "If fact A rationally supports the conclusion that fact B is also true, then B may be inferred from A." *Id.*

■ We do not second-guess the jury's determination where there are competing rational inferences available. We give deference "in that regard to the inferences that a fact-finder may draw." *Smith,* 374 Md. at 534, 823 A.2d at 668. In *Smith,* we relied on language from a Washington case, *State v. Bencivenga,* 137 Wash.2d 703, 974 P.2d 832 (1999), where evidence of a defendant's intent was at issue. The Washington Supreme Court opined that

[n]othing forbids a jury, or a judge, from logically inferring intent from proven facts, so long as it is satisfied that the state has proved that intent beyond a reasonable doubt. An essential function of the fact finder is to discount theories which it determines unreasonable because the finder of fact is the sole and exclusive judge of the evidence, the weight to be given thereto, and the credibility of witnesses.

*Id.* at 834–35 (citations omitted). We need not decide whether the jury could have drawn other inferences from the evidence, refused to draw inferences, or whether we would have drawn different inferences from the evidence. *Smith,* 374 Md. at 557, 823 A.2d at 682.

Accordingly, the proper standard of review to be applied here is that set forth in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), where the U.S. Supreme Court stated that "the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . . is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 318–19, 99 S.Ct. at 2788–89, 61 L.Ed.2d at 573 (emphasis in original). *See also Allen v. State,* 402 Md. 59, 76–77, 935 A.2d 421, 431 (2007) ("[W]e review a challenge to the sufficiency of the evidence in a jury trial by determining whether the evidence, viewed in a light most favorable to the prosecution, supported the conviction . . ., such that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."); *Smith,* 374 Md. at 533, 823 A.2d at 668 (2003) ("The standard for appellate review of evidentiary sufficiency, is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."); *Moye,* 369 Md. at 12, 796 A.2d at 827 (2002) ("The standard for appellate review of evidentiary sufficiency is whether any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt."); *State v. Albrecht,* 336 Md. 475, 478, 649 A.2d 336, 337 (1994) (citations omitted) ("[W]e review the

evidence in the light most favorable to the State, giving due regard to the trial court's finding of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses.").

 It is not our role to retry the case. *Allen*, 402 Md. at 77, 935 A.2d at 431; *Taylor*, 346 Md. at 457, 697 A.2d at 465. Because the fact-finder possesses the unique opportunity to view the evidence and to observe first-hand the demeanor and to assess the credibility of witnesses during their live testimony, we do not re-weigh the credibility of witnesses or attempt to resolve any conflicts in the evidence. *Tarray v. State*, 410 Md. 594, 608, 979 A.2d 729, 737 (2009); *Smith*, 374 Md. at 533–34, 823 A.2d at 668. We defer to the jury's inferences and determine whether they are supported by the evidence. *Id.* at 557, 823 A.2d at 682.

 That standard applies to all criminal cases, regardless of whether the conviction rests upon direct evidence, a mixture of direct and circumstantial, or circumstantial evidence alone. *Smith*, 374 Md. at 534, 823 A.2d at 668. "Circumstantial evidence is sufficient to sustain a conviction, but not if that evidence 'amount[s] only to strong suspicion or mere probability.'" *Bible*, 411 Md. at 157, 982 A.2d at 359 (alteration in original) (quoting *Taylor*, 346 Md. at 458, 697 A.2d at 465). Although circumstantial evidence alone is sufficient to sustain a conviction, the inferences made from circumstantial evidence must rest upon more than mere speculation or conjecture. *Id.*

 "'Circumstantial evidence may support a conviction if the circumstances, taken together, do not require the trier of fact to resort to speculation or conjecture, but circumstantial evidence which merely arouses suspicion or leaves room for conjecture is obviously insufficient.... It must ... afford the basis for an inference of guilt beyond a reasonable doubt.'" *Taylor*, 346 Md. at 458, 697 A.2d at 465 (second alteration in original) (quoting Underhill, *Criminal Evidence*, § 17 (6th ed. 1973)). We conduct such a review, however, keeping in mind our role of reviewing not only the evidence in

a light most favorable to the State, but also all reasonable inferences deducible from the evidence in a light most favorable to the State. *Allen*, 402 Md. at 77, 935 A.2d at 431.

## III. Analysis

### A.

Petitioner contends that the State adduced insufficient evidence to sustain his conviction of possession of marijuana. He argues that proof of his mere presence in a house where marijuana was being smoked was insufficient to sustain his conviction. He does not dispute the evidence admitted during the trial, and even conceded at oral argument before us that he was in reach of the burning blunt and could have reached to grasp it, but argues that we should not permit the factfinder to infer that he possessed any marijuana. With regard to the marijuana blunt, he does not dispute that there was sufficient evidence to establish that he had knowledge of the presence of the marijuana, but rather that the evidence was insufficient to establish that he exercised actual or constructive dominion and control over the blunt. As to the packets of marijuana discovered in the jacket, he contends that his proximity alone to the jacket is insufficient to establish that he was in possession of the marijuana in its pocket or, indeed, that he had knowledge of the marijuana hidden there from plain view.

The State counters that it was reasonable, considering the totality of the circumstances, for the jury to infer that Petitioner was in possession of the marijuana in the blunt. Considering his proximity to the blunt, the fact that it was visible to him from his seat at the table, and the overwhelming smell of the marijuana smoke, a rational fact-finder could infer reasonably that he was engaging in the mutual use and enjoyment of the marijuana, and exercised dominion and control over the marijuana.

As to the marijuana in the jacket, the State points to the same facts that support possession of the blunt to support its theory that Petitioner possessed the marijuana in the jacket.

Based on the unmistakable and overwhelming cloud of marijuana smoke in the room (indeed, throughout the rest of the first floor of the dwelling), the recent use of marijuana, and the marijuana in plain view, the State argues that the jury could infer that the marijuana found in the leather jacket near Smith was the source of the stuffing in the blunt.

### B.

 Petitioner was convicted of possession of marijuana in violation of § 5–601(a)(1) of the Criminal Law article. Section 5–601(a)(1) prohibits the "possess[ion] [of] . . . a controlled dangerous substance. . . . " Marijuana is included in the schedule of CDS. § 5–402(d)(1)(vii). The Legislature defined "possess" to mean "to exercise actual or constructive dominion or control over a thing by one or more persons." § 5–101(u). The possession may be "actual or constructive . . . and the possession may be either exclusive or joint in nature." *Moye,* 369 Md. at 14, 796 A.2d at 828. "It has long been established that the mere fact that the contraband is not found on the defendant's person does not necessarily preclude an inference by the trier of fact that the defendant had possession of the contraband." *State v. Suddith,* 379 Md. 425, 432, 842 A.2d 716, 720 (2004).

 Inherent in the element of exercising dominion and control is the requirement that the defendant knew that the substance was a CDS. *Id.; Moye,* 369 Md. at 14, 796 A.2d at 828. Knowledge is a required element because "an individual ordinarily would not be deemed to exercise 'dominion or control' over an object about which he is unaware." *Dawkins v. State,* 313 Md. 638, 649, 547 A.2d 1041, 1046 (1988). "[K]nowledge may be proven by circumstantial evidence and by inferences drawn therefrom." *Id.* at 651, 547 A.2d at 1047. Thus, we must determine whether there was sufficient evidence from which a reasonable fact-finder could conclude that Smith exercised dominion or control over the marijuana and had knowledge of the presence of the marijuana.

Petitioner urges that, in analyzing whether the evidence was sufficient, we ought to consider whether it was possible that one of the other occupants of 1932 Lanvale Street possessed the marijuana. If it can be determined precisely who that person is, he contends, the evidence was insufficient as to him. He finds strength for this argument in *Pope v. State,* 284 Md. 309, 396 A.2d 1054 (1979). Pope was convicted of second degree child abuse based upon her presence when another individual killed her own child, but "she was not a perpetrating actor." *Id.* at 331, 396 A.2d at 1067. "A principal in the second degree is one who is actually or constructively present when a felony is committed, and who aids or abets in its commission." *Id.* at 326, 396 A.2d at 1065. We distinguished a principal in the first degree from a principal in the second degree. "The principal in the second degree ... does not do the deed himself or through an innocent agent but in some way participates in the commission of the felony by aiding, commanding, counseling, or encouraging the actual perpetrator." *Id.* at 331, 396 A.2d at 1067 (citing R. Perkins, *Criminal Law* 658–59 (2d ed. 1969); Clark & Marshall, *A Treatise on the Law of Crimes* § 8.02 (7th ed. 1967)). Because Pope did not aid, counsel, command, or encourage the mother to kill her own child, we held that the evidence was insufficient and set aside her conviction. *Id.* at 333, 396 A.2d at 1068.

Applying the rationale in *Pope* to his situation, Petitioner contends that there is no direct evidence that he used or possessed marijuana. Therefore, his argument continues, he can be guilty only if there was evidence that he did something beyond simply being present and aware that a crime was committed by someone else. We do not see it that way. Petitioner was not convicted as a principal in the second degree. Although there was no direct evidence linking physically Petitioner to the marijuana, the jury was permitted to make inferences based upon the circumstantial evidence presented at trial. Moreover, under the statute, a person may be convicted if they are in constructive possession of marijuana. Under Petitioner's neat, tidy, and clean theory, he may not be

convicted of possession unless the blunt was found in his hand (or in his biological system perhaps) or he confessed to the police that he possessed the marijuana. Unfortunately for Smith, that is not how the statute and related common law evolved.

*Taylor v. State,* relied on by both parties, is, perhaps, the most factually similar Maryland case to the present case and provides the framework for our analysis. Taylor was lying on the floor of a hotel room in Ocean City, Maryland, with his head turned away from the door (apparently asleep or feigning sleep) when police officers entered the hotel room that Taylor and several other individuals rented. 346 Md. at 454–55, 697 A.2d at 463–64. The police found a baggie of marijuana in the carrying bag of another occupant of the room. *Id.* at 455, 697 A.2d at 464. The owner of the bag admitted that it was his marijuana. *Id.* The police also found another baggie of marijuana in yet another bag and rolling papers in another individual's wallet. *Id.* at 455–56, 697 A.2d at 464. The police officer asked everyone in the room if they had been smoking marijuana. Everyone denied they had. *Id.* at 455, 697 A.2d at 464. The occupants admitted, however, that some of their friends, who were not staying in the room, stopped by earlier and smoked marijuana in their presence. *Id.* at 456, 697 A.2d at 464. Although there was a strong odor of marijuana in the room, the police did not see anyone smoking marijuana, the ashtrays were clean, and no marijuana was visible openly. *Id.* at 456, 697 A.2d at 464.

We held that, viewed in the light most favorable to the State, the evidence established only that "Taylor was present in a room where marijuana had been smoked recently, that he was aware that it had been smoked, and that Taylor was in proximity to contraband that was concealed in a container belonging to another." *Id.* at 459, 697 A.2d at 465. Although Taylor had a possessory interest in the hotel room, he was not in exclusive possession of the room and its contents and the drugs were "secreted in a hidden place not otherwise shown to be within Petitioner's control. Accordingly, a rational inference cannot be drawn that he possessed the controlled danger-

ous substance." *Id.* at 459, 697 A.2d at 465–66. "Taylor's presence in a room in which marijuana had been smoked, and his awareness that marijuana had been smoked, cannot permit a rational trier of fact to infer that Taylor exercised a restraining or directing influence over marijuana that was concealed in personal carrying bags of another occupant of the room." *Id.* at 463, 697 A.2d at 468. Any finding that he was in possession of the marijuana was based solely on "speculation or conjecture." *Id.* at 459, 697 A.2d at 465. Accordingly, we held that the evidence was insufficient to support his conviction. *Id.* at 460, 697 A.2d at 465.

In *Taylor*, we discussed *Garrison v. State*, 272 Md. 123, 321 A.2d 767 (1974), and *State v. Leach*, 296 Md. 591, 463 A.2d 872 (1983). In *Garrison*, the police found drugs in an apartment that Garrison shared with her husband. When the police entered the premises, she was in the bed in the front bedroom. 272 Md. at 126, 321 A.2d at 769. The police did not find any drugs in the front bedroom where she was found, but they found a large amount of cash in that room. *Id.* at 127, 321 A.2d at 769. The police found her husband in a bathroom adjacent to the rear bedroom, attempting to flush 173 glassine bags of heroin into the toilet. *Id.* at 126, 321 A.2d at 769. Upon an inspection incident to her arrest, the police discovered the presence of needle marks on Garrison's arms (associated with drug use), estimated to have been from ten days to two weeks old. *Id.* at 127, 321 A.2d at 769.

We reversed her conviction because, although Garrison was a lessee and resident of the apartment, there was insufficient evidence that she was in possession of the heroin. *Id.* at 130–31, 321 A.2d at 771. "The seized heroin was not in the plain view of [Garrison], nor was there a juxtaposition between her (in the front bedroom) and the contraband being jettisoned by her husband in the bathroom." *Id.* at 131, 321 A.2d at 771.

Similarly, in *Leach*, the evidence before the trial court showed that Leach: had access to a one bedroom apartment leased by his brother, Michael; registered a motor vehicle at that address; and gave an employer that address, but was not

present when the police searched the premises. 296 Md. at 595, 463 A.2d at 874. The trial court found that Michael was the occupant of the apartment. *Id.* The police found PCP in a closed container on the bedroom dresser and drug paraphernalia in the bedroom closet. *Id.* at 596, 463 A.2d at 874. We held that "[e]ven though [Leach] had ready access to the apartment, it cannot be reasonably inferred that he exercised restraining or directing influence over PCP in a closed container on the bedroom dresser or over paraphernalia in the bedroom closet." *Id.* Accordingly, we held that the evidence was insufficient to sustain Leach's convictions for possession of PCP and paraphernalia. *Id.* at 592, 463 A.2d at 872.

Following *Taylor*, we decided *White v. State*, 363 Md. 150, 167, 767 A.2d 855, 864 (2001), where we concluded the evidence to be insufficient to support White's conviction for possession of cocaine, importation of cocaine, possession of cocaine with intent to distribute, conspiracy to import cocaine, and conspiracy to possess cocaine. The police arrested White after finding 194 grams of cocaine in a sealed box in the trunk of a vehicle in which he was a passenger. *Id.* at 157, 767 A.2d at 859. White did not have a possessory interest in, or control over, the vehicle. *Id.* at 167, 767 A.2d at 864. We opined that a rational fact-finder could not infer that White exercised "dominion and control over the cocaine found in a sealed box in the trunk of a vehicle in which he apparently had limited access and no possessory interest." *Id.*

In *Moye*, we applied our holding in *Taylor*. As in the present case, the State's case against Moye rested solely on circumstantial evidence. *Id.* at 17, 796 A.2d at 830. We held the evidence presented at trial was insufficient to sustain Moye's conviction for possession of CDS. *Id.* at 24, 796 A.2d at 834. The police arrived at the home of Moye's sister, Yolanda Bullock, and her husband, Joseph Bullock, after receiving a call that a "cutting," *i.e.*, a common law battery committed by striking another with a knife, had occurred. *Id.* at 5, 796 A.2d at 823. When the police arrived, all of the occupants of the residence were present, including Moye, who may have been staying in the home. *Id.* Upon arrival of the police, the

Bullocks and another occupant of the home, Gregory Benson, who rented the basement apartment, came out of the residence. *Id.* at 5, 6, 796 A.2d at 823. The police set up a barricade around the home. *Id.* at 6, 796 A.2d at 823. *Id.* Through the windows, the police observed Moye moving about the first floor and the basement of the home. *Id.* Several minutes later, Moye exited the home from a back door leading out of the basement. *Id.* The police arrested him and subsequently conducted a search of the home, including the basement where they found several open and partially opened drawers containing several small baggies of marijuana and drug paraphernalia. *Id.* at 6–8, 796 A.2d at 823–24.

We applied the reasoning employed in *Taylor* to hold that the evidence allowed for "nothing but speculation as to Moye's knowledge or exercise of dominion or control over the drugs and paraphernalia found in the Bullock's basement." *Id.* at 17, 796 A.2d at 830. Noting that he had no ownership or possessory interest in the premises where the drugs were found, we also placed significance on the absence of anything in the record establishing "where Moye was located in the basement in relation to the substances in question and the duration of his sojourn." *Id.* at 18, 796 A.2d at 831. Although, unlike *Taylor,* the drugs were found by the police in the open, the record was unclear with regard to the degree to which they were in plain view. *Id.* at 19, 796 A.2d at 831. Different photographs, taken from different perspectives, of the drawer containing the drugs showed different parts of the drawer. *Id.* Specifically, a photograph taken within a few feet of the counter did not show the baggies of drugs. *Id.* In contrast, photographs taken by someone standing directly over the drawer showed clearly the baggies of drugs and paraphernalia. *Id.*

Finally, we concluded that "no reasonable inference could be drawn that Moye was participating with others in the mutual enjoyment of the contraband." *Id.* at 20, 796 A.2d at 832. There was no evidence that *anyone* used drugs the night in question in the Bullock residence. *Id.* "Although the facts may lead a trier of fact to believe that *someone* may have been

using marijuana in the Bullock's home, the evidence fail[ed] to establish *who* may have been using it, and *when* such use may have taken place." *Id.* (emphasis in original). After reviewing the circumstantial evidence, we concluded that the evidence was insufficient to establish the requisite knowledge and dominion or control over the CDS. *Id.* at 24, 799 A.2d at 834.

In *State v. Suddith*, 379 Md. 425, 427–28, 842 A.2d 716, 717 (2004), Suddith was traveling in a Ford Explorer during a high speed police chase through the streets of the District of Columbia. The chase ended in Maryland when the vehicle crashed and flipped over three times. *Id.* Upon a search of the vehicle after the crash, the police discovered heroin, crack cocaine, and various types of drug paraphernalia scattered throughout the vehicle. *Id.* at 428, 842 A.2d at 718. The police arrested all of the occupants of the vehicle, each of whom denied knowledge of the drugs or who had been the driver of the vehicle. *Id.* The police conducted a search incident to arrest and discovered $220 in cash on Suddith's person. *Id.* The police did not find drugs or paraphernalia on Suddith's person. *Id.*

Suddith argued to this Court "that the jury could have done nothing but speculate as to whether he knew of the drugs in the car due to the lack of testimony regarding [Suddith's] location in the car, the location of the contraband prior to the crash and the circumstances surrounding the drug paraphernalia's suspected use, *i.e.,* when, where, and by whom." *Id.* at 433, 842 A.2d at 721. We disagreed with that argument, finding that a rational jury could have made the logical inference "that the items were in the open passenger compartment or open cargo area before the crash." *Id.* Unlike in *Moye,* where it was unclear whether the drugs had been in plain view of Moye, Suddith "was a passenger in a vehicle where a large amount of contraband was found *scattered throughout* the vehicle." *Id.* at 436, 842 A.2d at 722 (emphasis in original). We concluded that "the jury, using its own experience and common sense, could reasonably infer that it was inconceivable, given the quantity of contraband found inside the vehicle, that all of the contraband was concealed

from [Suddith's] view before the vehicle flipped over three times." *Id.* at 436, 842 A.2d at 722–23.

We also distinguished *Suddith* from *White*, where the drugs in the latter case were secreted in a sealed box and there was nothing to indicate that White had any connection or access to the locked trunk or sealed container hiding the drugs. *Id.* at 438, 842 A.2d at 723. In contrast, we found it relevant that Suddith had access to the drugs. He "was a passenger in a vehicle where, at the time the police were able to approach the vehicle, drugs were strewn throughout the insider compartment, not in a sealed box in a locked trunk." *Id.* at 428, 842 A.2d at 723–24.

We also concluded that a reasonable inference could be drawn, from the location of the drugs, that all occupants of the vehicle had access to the drugs, thus distinguishing the case from *Taylor*. In *Taylor*, the trier of fact "had to speculate whether Taylor had control over the drugs located in a closed personal carrying bag of another in a hotel room." *Id.* at 441, 842 A.2d at 725. In *Suddith*, "[n]o evidence singling out another passenger existed and all denied ownership of it. An inference thus could be made that all of the Explorer's occupants had equal access to the contraband." *Id.* at 440–41, 842 A.2d at 725. Thus, we held that the evidence was sufficient to support Suddith's conviction. *Id.* at 445–46, 842 A.2d at 728.

*Johnson v. State*, 142 Md.App. 172, 788 A.2d 678 (2002), offered to us by the State, also informs our analysis. Johnson was arrested for possession of marijuana after the police stopped the car in which he was riding in the front seat as a passenger. *Id.* at 181, 788 A.2d at 683. The police officer smelled the marijuana smoke when he reached the rear bumper of the vehicle. *Id.* at 199, 788 A.2d at 693. The police officer saw, through the window of the vehicle, what he believed to be marijuana on the gear shifter, which was equidistant between the driver and Johnson. *Id.* at 181, 788 A.2d at 683. Johnson and the driver denied any knowledge of the marijuana. *Id.*

The Court of Special Appeals held that, although Johnson did not own or have a possessory interest in the vehicle, the fact-finder could have drawn a reasonable inference from the circumstances that Johnson was participating with the driver and owner of the vehicle in the mutual use and enjoyment of the marijuana, thus demonstrating knowledge. *Id.* at 198, 788 A.2d at 693. Because the police officer could smell the marijuana smoke from outside the car, "common sense dictate[d] that it was even more powerful and overwhelming inside the vehicle. Likewise, if [the arresting officer] was able to observe so quickly the marijuana bud through the window, then it is extremely unlikely that Johnson, who was sitting right next to it, had not seen it as well." *Id.* at 199, 788 A.2d at 693–94 (quotation marks omitted).

The court determined also that it was reasonable to infer from the circumstances that Johnson exercised dominion and control of the gear shift area of the vehicle, even though he was not the driver. *Id.* at 200, 788 A.2d at 694. In reaching that conclusion, the court noted that it was relevant that the marijuana was within Johnson's arm reach. *Id.* Accordingly, the court held that the evidence, viewed in a light most favorable to the State, supported the rational conclusion that Johnson was in possession of the marijuana. *Id.* at 201, 788 A.2d at 694–95.

Petitioner here also relies on two out-of-state cases in support of his argument that there was insufficient evidence to convict him of possession of marijuana. They are *Reser v. State*, 488 P.2d 929 (Okla.Crim.App.1971) and *Rhyne v. State*, 620 S.W.2d 599 (Tex.Crim.App.1981). His reliance on both is misplaced. In *Reser*, the police went to a garage apartment with a search warrant for the premises. 488 P.2d at 929. The police knocked and, upon receiving no answer, entered the unlocked apartment and conducted a search of the premises. *Id.* Approximately twenty-five minutes after the police commenced their search, Reser and another individual walked into the apartment. *Id.* In response to police inquiry as to why they were there, Reser replied that he lived there. *Id.* Several other people showed up at the apartment and some

admitted to living there also. *Id.* at 929–30. The officers found marijuana in the premises. *Id.* at 930. Thus, the evidence showed that Reser had been at the apartment, but several other people also had access to the apartment. *Id.*

The Oklahoma Court of Criminal Appeals held that the evidence was insufficient to support Reser's conviction for possession of marijuana. The court stated that "[i]t cannot be inferred from merely being present in a place where marihuana is found that the defendant had knowledge of its presence and had dominion and control.[13] There must be additional evidence of knowledge and control to sustain a conviction. . . ." *Id.* Thus, the court concluded that "any guilt on behalf of defendant is reached by inference only, which is not sufficient." *Id.*

We distinguish *Reser* easily from the present case. Reser was not on the premises when the police conducted the search of the apartment. The only evidence linking Reser to the marijuana was his possessory interest in the apartment. Petitioner was not merely present in a place were marijuana was found, but was within arm's reach of a lit blunt and in a room engulfed in marijuana smoke.

Petitioner embraces *Rhyne v. State* for the proposition that mere presence at the scene of an offense, or even knowledge of an offense, is not sufficient evidence to sustain a conviction for possession of drugs. In *Rhyne,* the police executed a search warrant for a residence for which Rhyne was the lessee, but no longer lived there. *Id.* at 600–01. Two other individuals lived there, although Rhyne continued to share some of the expenses of the house and left some of his belongings there. *Id.* Upon arrival at the residence, the police observed an individual (not Rhyne) running into a bedroom. *Id.* at 600. The police pursued and discovered that he had a weapon. *Id.* Rhyne was seated in the living room when the officers arrived. *Id.* The police arrested Rhyne. *Id.* He was

---

13. "Marihuana" is an alternate spelling of "marijuana." Webster's Collegiate Dictionary 727 (9th ed. 1989).

not named in the warrant and the police did not find any drugs on his person. *Id.* The police found, however, six packages of heroin behind a shingle on the exterior of the house. *Id.* At trial, a police officer testified that he conducted several undercover purchases of drugs at the house. Rhyne was present on those occasions, but the police officer stated that he had nothing to do with the drugs. *Id.*

The Texas Court of Criminal Appeals opined that "[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Id.* at 601. The court determined that there were no such "independent facts and circumstances" present to link Rhyne to the heroin seized from behind the shingle. *Id.* "The mere presence of a defendant at the scene of an offense or even knowledge of an offense does not make one a party to joint possession. Further, the fact that a defendant has rented the premises upon which narcotics are found, if also occupied by others, is not usually sufficient in and of itself to justify a finding of joint possession." *Id.* (citations omitted). Thus, the court held that the evidence was insufficient to support Rhyne's conviction. *Id.* The court found relevant, among other factors, that the heroin was not in plain view, but was recovered outside of the house. *Id.* Additionally, there was no indication in the court's opinion that drug use was taking place in front of Rhyne or anywhere in the house.

*Rhyne* also is distinguishable readily from the present case as a matter of law. Texas law provided that a conviction may not be based upon circumstantial evidence alone "if the circumstances do not exclude every other reasonable hypothesis except that of the defendant's guilt." *Id.* As discussed *supra,* although this Court, in the past, may have included statements to similar effect in a few of its opinions, that does not stand as a bar to a fact-finder drawing reasonable inferences from circumstantial evidence.

**198**

Furthermore, the facts of *Rhyne* are distinguished readily from the present case. In *Rhyne*, the drugs were secreted behind a shingle on the exterior of the house. Here, the burning blunt was not only in plain view of Petitioner, but also within his arm's reach. In *Rhyne*, there was no drug use taking place. Here, a person or persons has been smoking marijuana. It was reasonable for the jury to infer that Petitioner was one of them based on his proximity to what remained of the still smoldering blunt.

Our review of the law of CDS possession in Maryland reveals that possession is determined by examining the facts and circumstances of each case. In sum, we have found several factors to be relevant in the determination of whether an individual was in possession of the CDS, including, the defendant's proximity to the drugs, *Suddith*, 379 Md. at 436, 842 A.2d at 722; *Moye*, 369 Md. at 18, 796 A.2d at 830–31; *White*, 363 Md. at 167, 767 A.2d at 864; *Garrison*, 272 Md. at 131, 321 A.2d at 771; *Johnson*, 142 Md.App. at 200, 788 A.2d at 694, whether the drugs were in plain view of and/or accessible to the defendant, *Suddith*, 379 Md. at 438, 842 A.2d at 723–24; *Moye*, 369 Md. at 19, 796 A.2d at 831; *White*, 363 Md. at 167, 767 A.2d at 864; *Taylor*, 346 Md. at 459–60, 697 A.2d at 465–66; *Leach*, 296 Md. at 596, 463 A.2d at 874; *Garrison*, 272 Md. at 131, 321 A.2d at 771; *Johnson*, 142 Md.App. at 200–01, 788 A.2d at 694, whether there was indicia of mutual use and enjoyment of the drugs, *Moye*, 369 Md. at 20, 796 A.2d at 832; *Taylor*, 346 Md. at 459, 697 A.2d at 465; *Garrison*, 272 Md. at 131, 321 A.2d at 771; *Johnson*, 142 Md.App. at 198, 788 A.2d at 693, and whether the defendant has an ownership or possessory interest in the location where the police discovered the drugs. *White*, 363 Md. at 167, 767 A.2d at 864. None of these factors are, in and of themselves, conclusive evidence of possession. The only factor that the evidence and reasonable inferences in this record do not implicate Petitioner is ownership of the premises, but we have held that factor is not dispositive. *See Leach*, 296 Md. at 592, 463 A.2d at 872 (holding that even though Leach had ready access to the apartment he may have shared with his brother,

the evidence was insufficient to establish that he was in possession of PCP in a closed container and paraphernalia in the bedroom closet); *Garrison,* 272 Md. at 130, 142, 321 A.2d at 771, 777 (holding that although the defendant was the co-lessee of the premises, there was insufficient evidence to establish that she was in possession of heroin in her apartment).

We hold that the circumstantial evidence upon which the State's case against Smith rested was sufficient to find, beyond a reasonable doubt, that he was in possession of the blunt.

We are able to distinguish readily the cases discussed *supra.* Primarily, in *Taylor, White, Garrison,* and *Leach,* there was no contraband in plain sight. In *Taylor,* the police discovered the contraband only after searching containers belonging to other individuals present in the room. In *White,* the drugs were contained in a sealed box inside a locked trunk. There was no basis upon which to impute knowledge to Taylor or White. Similarly, unlike in *Garrison,* where there was no contraband in the same room as the defendant, the marijuana in the present case was combusting literally under Petitioner's nose. In *Leach,* the defendant may have had access to the apartment where the drugs were found, but the drugs were found in a closed container and paraphernalia was found in a closet. Here, Petitioner sat within arm's reach of a lit blunt.

Similar to *Suddith,* in the present case there was no question whether drugs were in plain view of Petitioner. It is clear that Petitioner had knowledge of the marijuana in the blunt. He did not challenge that fact at trial. If this Court could accept that the jury in *Suddith* could infer that Suddith exercised dominion or control over the drugs and paraphernalia found scattered throughout the interior of the overturned vehicle, it certainly is rational for the jury to infer in the present case that Petitioner exercised dominion or control over the known marijuana (packaged for immediate consumption and in fact being consumed) sitting in front of him.

Similar to *Suddith*, no evidence existed to single-out another occupant of the house and no one claimed ownership of the blunt. The jury could draw the inference that everyone at the table had equal access to and had enjoyed the contraband.

In *Moye*, it was unclear how close Moye was to the contraband and whether it was visible to Moye. Here, not only was the marijuana in the lit blunt in arm's reach and plain sight, but it was rational to conclude that at least one or more persons had been smoking it. In *Taylor*, the fact-finder had to speculate to reach the conclusion that Taylor possessed the marijuana. No such speculation is required here.

In conclusion, Petitioner was in close proximity to the known marijuana in the blunt, the lit and partially-consumed marijuana blunt was in Petitioner's view, the blunt was accessible easily to him, and it was reasonable to infer from the circumstances that he was engaging in the mutual use and enjoyment of the marijuana. "These inferences are the very type of inferences that juries are charged with making—to make findings of fact based on the evidentiary facts and their common sense reasoning." *Suddith*, 379 Md. at 446, 842 A.2d at 728. We conclude that the inferences made by the jury in the present case were supported by the evidence. It is not relevant to consider whether it also may have been reasonable to infer that Petitioner was merely an innocent bystander. The jury determined otherwise. We defer to the jury's finding that Petitioner had knowledge of and exercised dominion or control over the marijuana. As such, we hold that the evidence was sufficient to support his conviction for possession of marijuana.[14]

---

14. We do not consider whether the evidence as to the packets of marijuana found in the jacket on the chair next to where Smith sat was sufficient, separate from the evidence as to the blunt, to convict him of possession. The lily need not be gilded further. Were it meaningful to the outcome, we would have found that evidence insufficient because no reasonable inferences could be drawn that such was the source of the marijuana in the blunt or that Smith knew of the existence of the packets on the jacket pocket, hidden from plain view as they were.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

BELL, C.J. and GREENE, J., dissent.

Dissenting Opinion by GREENE, J., which BELL, C.J. joins.

The majority attempts to distinguish the facts of the present case from *Jones v. State*, 395 Md. 97, 909 A.2d 650 (2006), on the basis that *Jones* involved a failure to present evidence on an element of the crime with which the defendant was charged. In *Jones*, 395 Md. at 118, 909 A.2d at 662–63, the State did not present any evidence to prove breaking, an element of burglary, rather asking the jury to infer a breaking from the State's evidence of the defendant's unauthorized presence in the building. In the majority's view of the present case, the State's evidence that Smith was aware of the marijuana blunt and that the blunt was on a table, within his reach, presented sufficient evidence to satisfy the elements of possession. I disagree. In my view, the State failed to present any indicia of Smith's dominion or control over the blunt, which is a separate and distinct factual question from whether Smith knew that the blunt contained marijuana. We have previously rejected the notion that one's mere presence in the area of contraband, without more, is sufficient evidence to sustain a conviction for possession. *See, e.g., Moye v. State*, 369 Md. 2, 17–24, 796 A.2d 821, 830–34 (2002). Thus, our holding in *Jones*, 395 Md. at 120, 909 A.2d at 662–63 clearly applies to the facts of this case, and this Court should hold that Smith's knowledge of and proximity to the presence of marijuana is insufficient to sustain a conviction for possession of marijuana, in the absence of any indicia of his direct or indirect dominion or control over the marijuana.

Md. Code (2002, 2009 Supp.), § 5–101(u) of the Criminal Law Article defines possession or to "[p]ossess" as "exercise [of] actual or constructive dominion or control over a thing by one or more persons." In accord with our precedent, "control [means], the 'evidence must show directly or support a ration-

al inference that the accused did in fact exercise some dominion or control over the prohibited ... drug in the sense contemplated by the statute, *i.e.*, that [the accused] exercised some restraining or direct influence over it.' " *State v. Suddith*, ˙379 Md. 425, 432, 842 A.2d 716, 720 (2004) (citations omitted).

It is undoubtedly true that one cannot exercise dominion or control over contraband without knowledge of its presence. *See Taylor v. State*, 346 Md. 452, 463, 697 A.2d 462, 468 (1997). To establish a prima facie case, the State cannot prove that the accused had possession of contraband without proving that the accused also had "[k]nowledge of the presence of [the] object." *Taylor*, 346 Md. at 460, 697 A.2d at 466 (quoting *Dawkins v. State*, 313 Md. 638, 649, 547 A.2d 1041, 1046 (1988)). The majority in the present case, however, engages in a flawed analysis by focusing on whether Smith was aware of the presence of contraband, then allowing Smith's mere presence in close proximity to the contraband to serve as a substitute for the requisite element of dominion or control over the contraband. Mere knowledge of the presence of contraband is not a substitute for participation in the use and enjoyment of that substance anymore than it is evidence of participation, and it is likewise insufficient to demonstrate a restraining or direct influence over the substance. Moreover, it is well settled non-constitutional law in Maryland that one's mere presence at the scene of a crime without more is insufficient evidence of one's participation in a crime. *See, e.g., Pope v. State*, 284 Md. 309, 331–33, 396 A.2d 1054, 1067–68 (1979).

The State must prove that Smith had a restraining or direct influence over the contraband in some way.[1] For example,

---

1. In its focus on the Court's analysis of the defendant's knowledge or awareness of the presence of contraband in *Moye v. State*, 369 Md. 2, 14, 796 A.2d 821, 828 (2002); *Taylor v. State*, 346 Md. 452, 455, 697 A.2d 462, 463–64 (1997); and *Garrison v. State*, 272 Md. 123, 141–42, 321 A.2d 767, 777 (1974); the majority fails to acknowledge the key fact that in all of these cases, the State established that the accused had a possessory interest in the premises from which the contraband was

our decision in *Moye*, 369 Md. at 17–24, 796 A.2d at 830–34, considered both Moye's knowledge of the presence of drugs and whether he exercised restraining or direct influence over the contraband through a right of ownership or possession of the property where the contraband was recovered. *Moye* further demonstrates that evidence of mere presence in the home is insufficient to establish either knowledge of the contraband or a possessory interest in the area where officers found contraband. Further, our decision in *White v. State*, 363 Md. 150, 164–67, 767 A.2d 855, 863–64 (2001), noted both that White was not aware of cocaine stowed in a box of pots and pans in a vehicle in which he was a passenger and that White had "limited access and *no possessory interest* in the vehicle," thus demonstrating his lack of dominion and control over the cocaine. (Emphasis added.)

In my view, knowledge of the presence of contraband and indicia of a restraining or direct influence are separate and distinct elements of the crime of possession. Evidence to establish one element does not necessarily establish the other. For example, in *Garrison v. State*, 272 Md. 123, 141–42, 321 A.2d 767, 776–77 (1974), we reversed Garrison's conviction when the State proved that Garrison had a possessory interest in the apartment where contraband was recovered without proving that she had knowledge of the presence of contraband. Although the contraband was in an area that was within the scope of Garrison's control, there was no evidence that she knew about the contraband. *Id.* Thus, *Garrison* confirms that knowledge or awareness of the presence of contraband is the required mental state or *mens rea* for the crime of possession. *See also Taylor*, 346 Md. at 460, 697 A.2d at 466–68. The majority, however, chooses to turn our settled jurisprudence on its head by adopting a principle that, in effect, allows the required *mens rea*, i.e. knowledge or awareness of the illicit

---

recovered. The accused's possessory interest in the premises is evidence of a restraining or direct influence. Although in this case Smith had knowledge of the presence of contraband that was lacking from the aforementioned cases, Smith did not have a possessory interest in the premises.

substance, for the crime of possession, to serve as a substitute for, or evidence of, the element of dominion and control in possession cases.

Furthermore, the majority's reliance on *State v. Smith*, 374 Md. 527, 557–59, 823 A.2d 664, 682–83 (2003), is misplaced. In *Smith*, this Court held that the State presented sufficient evidence to convict Smith of knowingly transporting a handgun. *Id.* The State did not present any evidence directly connecting Smith to the gun, which was in the backseat of the vehicle he was driving, but presented evidence that Smith had a possessory interest in the vehicle. *Smith*, 374 Md. at 550, 823 A.2d at 677–78. We held that "[a] rational fact-finder may infer that, generally, an owner/driver of a vehicle has knowledge of the contents of that vehicle," thus supporting an inference that Smith knowingly transported the handgun. *Smith*, 374 Md. at 559, 823 A.2d at 683.[2] Although I generally agree with our statement in *Smith*, 374 Md. at 534, 823 A.2d at 668 cited by the majority, that the finder of fact has the "ability to choose among differing inferences that might possibly be made from a factual situation," the fact finder may not draw any inferences if no facts are presented. In the present case, the State did not present any facts, direct or circumstantial, demonstrating indicia of Smith's dominion or control over the marijuana blunt. Accordingly, our holding in *Jones*, 395 Md. at 120, 909 A.2d at 662–63, in which we held it was pure speculation to determine that there had been a breaking when the State presented no direct or circumstantial evidence of a breaking, applies to the facts of this case.

---

**2.** In *State v. Smith*, 374 Md. 527, 550, 823 A.2d 664, 677 (2003), we noted that:

> [P]ossession and control standards of simple possession cases, even in joint possession and control situations, are not necessary elements (although they may be relevant facts) in respect to the offense of transporting. The issue in the case *sub judice* is not who possessed or owned, or even controlled the handgun, but whether respondent was knowingly transporting the handgun.

Thus, because the crime alleged in *Smith* required proof of fewer elements than the crime of possession, which is the charge in the present case, the facts of *Smith* are not relevant to the outcome of this case.

The majority also relies on our holding in *Suddith*, 379 Md. at 446–47, 842 A.2d at 728–29, that a jury reasonably inferred that the occupant of a stolen vehicle from which contraband was recovered possessed the contraband. Assuming *arguendo* that *Suddith* was correctly decided,[3] the facts of *Suddith* differ significantly from the facts of the present case. In *Suddith*, 379 Md. at 427–28, 842 A.2d at 717–18 the defendant was in a stolen vehicle that contained a large quantity of contraband, which included paraphernalia used in manufacturing and dispensing drugs as well as the drugs themselves. This Court held that the quantity of drugs found within the vehicle permitted an inference that the defendant was aware of the presence of drugs in the vehicle. *Suddith*, 379 Md. at 444–45, 842 A.2d at 727–28. Further, and more importantly, the combination of the stolen vehicle, the large quantity of drugs, the paraphernalia used for manufacturing and dispensing drugs, and items found on the defendant's person permitted an inference that the defendant had dominion or control over the drugs as part of a common criminal enterprise with the other passengers in the vehicle. *See id.* In short, the Court reasoned that Suddith's presence in the vehicle with the drugs was not innocent; rather, it was the product of his participation in a criminal enterprise with the other passengers. *See Suddith*, 379 Md. at 445 & n. 7, 842 A.2d at 727 & n. 7.

Unfortunately, the majority, in the present case, takes a step beyond *Suddith*, and, in my view, seems to favor speculation and conjecture over evidence and facts. In the present

---

**3.** I am particularly astounded by the majority's suggestion that *State v. Suddith*, 379 Md. 425, 444–45, 842 A.2d 716, 727–28, stands for the idea that if there is "[n]o evidence singling out" any one individual, then "an inference . . . could be made that all of the . . . occupants had equal access to the contraband." In this case, the majority applies this to the fact that the marijuana at the table was not known to belong to anyone else, therefore, it must have belonged to everyone present. This principle may hold in *Suddith*, where there was evidence of a common criminal enterprise afoot, but it should not apply in cases where there is no other evidence of the defendant's restraining or direct influence over the contraband.

case, there is no evidence to suggest that Smith was participating in any sort of common criminal enterprise while he was sitting at the table, nor was there any evidence suggesting that his presence at 1932 Lanvale Street had any nefarious purpose. Further, the State did not present any evidence, other than Smith's presence at the table, that Smith was engaging in the mutual use and enjoyment of the marijuana in question. From Smith's presence within arm's length of a burning marijuana blunt, with nothing more, the jury was asked to infer that the defendant exercised restraining or direct influence over the blunt. This inference is nothing but conjecture based on "strong suspicion or mere probability." *Bible v. State,* 411 Md. 138, 157, 982 A.2d 348, 359 (2009) (quoting *Taylor,* 346 Md. at 458, 697 A.2d at 465). Not only is this holding in opposition to our decisions in *Moye,* 369 Md. at 17–24, 796 A.2d at 830–34, and *White,* 363 Md. at 166–67, 767 A.2d at 863–64, where mere presence in an apartment or a car was held insufficient to establish a possessory interest in these locations, it also defies a common sense understanding of what constitutes dominion or control over an object.

The majority's holding relies heavily on the fact that the marijuana blunt was within Smith's reach and thus accessible to him. Employing that logic, the contraband was within the reach of everyone in the area from where the blunt was retrieved, including the police officers on the scene. The majority's holding would make the officers on the scene subject to prosecution for possession of a controlled dangerous substance. By allowing mere presence within arm's length of an object, without more, to permit an inference of restraining or direct influence over the object goes against all basic notions of courtesy and how polite societies function. Ordinarily people are taught from a tender age, just because an object is within one's grasp does not mean, without more, that the object belongs to that person or that the person has the right to possess that object. This is particularly true when the person in question is a visitor in another's home, as Smith apparently was in this case. Without evidence that Smith mutually used or enjoyed the marijuana with the other individ-

uals at the table, or some other evidence that Smith exercised restraining or direct influence over the marijuana, inferring possession merely from his proximity to the marijuana is nothing but conjecture.

Because there is no evidence of Smith's mutual use or enjoyment of the marijuana with the other individuals at the table, the majority's holding would permit the trier of fact to infer his dominion or control over the marijuana from his presence at the scene of the alleged crime. It is well settled that one's presence at a crime scene, without some evidence of participation, aid, counsel, or encouragement of the crime, is insufficient to sustain a conviction. *Pope*, 284 Md. at 331–33, 396 A.2d at 1067–68. The majority distinguishes our holding in *Pope* from the present case on the basis that in the present case, "[Smith] was not convicted as a principal in the second degree." This is an obscure distinction. Regardless of whether the accused is charged with committing the offense as a principal, as in all misdemeanors such as the present case, or as a principal in the second degree, as may be the case when the alleged crime is a felony, the State must prove that the accused took some action demonstrating his or her participation in the crime.[4] *See State v. Williams*, 397 Md. 172, 197, 916 A.2d 294, 309 (2007) (holding that a defendant may be convicted of misdemeanors or felonies arising out of a criminal enterprise that he embraced and actively aided). Without

---

4. We explained the distinction between participation as a principal in the first degree and a principal in the second degree in *State v. Williams*, 397 Md. 172, 192–92, 916 A.2d 294, 306–07 (2007):

This Court has established that the common law doctrine of accessoryship is applicable to felonies only.... We explained that "[a] principal in the first degree is one who actually commits a crime, either by his own hand, or by an inanimate agency, or by an innocent human agent." To the contrary, a principal in the second degree "is one who is guilty of [a] felony by reason of having aided, counseled, commanded or encouraged the commission thereof in his presence, either actual or constructive".... These differences, however, are not applicable to misdemeanors because, in Maryland, the principles of accessoryship apply only to felonies; as to misdemeanors, all participants in a crime are considered principals.

*Id.* (citations omitted).

some action, there cannot be a completed crime, even if the accused has the required *mens rea* for the offense. To prove that the accused was a principal in the second degree, the State must present evidence, direct or circumstantial, that the accused "participate[d] in the commission of the felony by aiding, commanding, counseling or encouraging the actual perpetrator." *Pope*, 284 Md. at 331, 396 A.2d at 1067 (citing R. PERKINS, CRIMINAL LAW 658–59 (2d ed. 1969)(footnote omitted)). Similarly, to prove that the accused possessed a controlled dangerous substance, the State must present evidence that the accused took some action demonstrating his dominion or control over the contraband. *Moye*, 369 Md. at 17–24, 796 A.2d at 830–34; *White*, 363 Md. at 164–67, 767 A.2d at 863–64.

In *Pope*, 284 Md. at 331–32, 396 A.2d at 1068 (citations omitted), we held that there was insufficient evidence to sustain a conviction when the State failed to present any evidence that Pope "manifested by acts, words, signs, motions, or any conduct which ... evince[d] a design to encourage, incite, or approve of the crime" other than her presence when the crime was committed. What the present case has in common with *Pope*, and where it is distinguishable from *Williams*, 397 Md. at 195, 916 A.2d at 309, and *Suddith*, 379 Md. at 444–45, 842 A.2d at 727–28, is that in this case, the State failed to present any evidence that Smith participated in the mutual enjoyment of the marijuana blunt, or otherwise participated in any sort of criminal activity or criminal enterprise. Thus, pursuant to our holding in *Pope*, 284 Md. at 331–33, 396 A.2d at 1067–68, the evidence presented against Smith is insufficient, as a matter of law, to convict him.

I disagree with the majority's assertion that, if this Court requires evidence of dominion or control beyond presence and proximity to the contraband, a defendant "may not be convicted of possession unless the [marijuana] blunt was found in his hand (or in his biological system perhaps) or he confessed to the police that he possessed marijuana." This is no more than a strawman argument. There are any number of ways that the State could demonstrate, through circumstantial evidence, that a defendant had restraining or direct influence over the

marijuana, provided the evidence is available. For example, the prosecution could present evidence of a defendant's mutual use or enjoyment of the marijuana; forensic evidence connecting the defendant to the marijuana blunt; evidence that the defendant possessed objects related to marijuana consumption, such as rolling papers or a pipe; evidence that a defendant was actually under the influence of marijuana at the time of the alleged possession (rather than the use of innuendo or guesswork); or evidence that the defendant had a possessory interest in the premises where the drugs were found. In short, the State must present some evidence that the defendant took some action which demonstrated his restraining or direct influence over the marijuana. Mere presence, even with knowledge that the blunt contained marijuana, will not suffice for evidence of action or participation in the crime of possession.

Although, in the immortal words of Mr. Mackey, "[d]rugs are bad," the law imposes no legal duty, as opposed to moral duty, to stop others from using drugs, or to run away from people who are using drugs.[5] It is unreasonable to infer from Smith's proximity to others who are or may have been using marijuana that Smith possessed marijuana on the basis of his association. Thus, because the State has not presented any indicia of Smith's restraining or direct influence over the marijuana blunt, I would reverse the judgment of the Court of Special Appeals.

Chief Judge BELL joins this dissent.

---

**5.** Mr. Mackey is a recurring character on the popular animated sitcom *South Park*, which began airing on the Comedy Central network in 1997. He is the school counselor at the elementary school featured on the show. He lectured his fourth grade charges about the dangers of marijuana in Episode 204, "Ike's Wee Wee," which originally aired on May 27, 1998:

> You boys need to listen up, m'kay, what I'm talking about might save your life someday.... Drugs are bad. You shouldn't do drugs. If you do them, you're bad, because drugs are bad. It's a bad thing to do drugs, so don't be bad by doing drugs, m'kay, that'd be bad.

South Park Archives, http://southpark.wikia.com/wiki/Ike's_Wee_Wee (last visited June 11, 2010).